*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0094P (6th Cir.)
File Name: 04a0094p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

   *v.*                                            No. 02-3043

JULIO VALDEZ,
   *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-00756—David A. Katz, District Judge.

Argued: January 27, 2004

Decided and Filed: April 2, 2004

Before: SUHRHEINRICH, CLAY, and SUTTON, Circuit
Judges.

_____

### COUNSEL

**ARGUED:** Matthew M. Robinson, Cincinnati, Ohio, for
Appellant. Jeffrey P. Singdahlsen, UNITED STATES
DEPARTMENT OF JUSTICE, CRIMINAL DIVISION,
Washington, D.C., for Appellee. **ON BRIEF:** Matthew M.
Robinson, Cincinnati, Ohio, for Appellant. Louis M. Fischer,

UNITED STATES DEPARTMENT OF JUSTICE,
CRIMINAL DIVISION, Washington, D.C., for Appellee.

_____

### OPINION

_____

CLAY, Circuit Judge. After pleading guilty prior to trial in
the United States District Court for the Northern District of
Ohio to one count of conspiring to possess cocaine with the
intent to distribute in violation of 21 U.S.C. §§ 841 and 846,
Julio Valdez moved to withdraw his plea on the ground that
he did not understand the quantity of drugs which he had
admitted possessing. The district court denied that motion
and sentenced Valdez to 192 months' imprisonment followed
by five years of supervised release. Because Valdez's guilty
plea was voluntary and the district court did not abuse its
discretion in denying his motion to withdraw the plea, we
**AFFIRM** his conviction and sentence. We refuse to entertain
Valdez's claim of ineffective assistance of counsel as unripe
for review.

### I

On September 5, 2000, a grand jury sitting in the Northern
District of Ohio returned a multi-count indictment against
numerous Defendants, including Defendant Julio Valdez.
The grand jury charged Valdez with conspiracy to distribute
and possess with intent to distribute cocaine, cocaine base and
marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846
(Count 1); knowingly and intentionally possessing with the
intent to distribute approximately 80.79 grams of cocaine in
violation of 21 U.S.C. § 841(a)(1) (Count 15); and knowingly
and intentionally possessing with the intent to distribute
approximately 12.12 grams of cocaine in violation of
21 U.S.C. § 841(a)(1) (Count 16). Count 1 of the indictment
did not ascribe a specific amount of cocaine or cocaine base
to Valdez, although it described a drug conspiracy

masterminded by David Trinidad Gonzalez, who allegedly had obtained over 500 kilograms of cocaine and over 10 kilograms of cocaine base. The indictment explained that Gonzalez distributed those drugs through many of his family members, relatives and associates, including Defendant Valdez and ten others.

In August 2001, Valdez agreed via a written plea agreement to plead guilty to the conspiracy count (Count 1), in exchange for the government's agreement to drop Counts 15 and 16 and not to oppose a three-point reduction in the applicable sentencing guideline offense level for Valdez's acceptance of responsibility. The agreement stated, in part:

> By signing this agreement, the defendant admits 1) that the conspiracy in Count 1 of the indictment existed, and that he knowingly and voluntarily joined the conspiracy, and that the purpose of the conspiracy in Count One was to knowingly and intentionally distribute, and possess with intent to distribute, cocaine.
>
> * * *
>
> The government and the defendant agree and stipulate to the following statement of facts and applicable sentencing guideline factors:
>
> 1. That the defendant conspired to possess with intent to distribute at least 50 but less than 150 kilograms of cocaine (Base Offense Level 36).

(J.A. 102, ¶¶ 3, 7.) The agreement further noted that Valdez had read the plea agreement, that he had an opportunity to discuss it with his attorney, that he fully understood the agreement and that he was signing the agreement voluntarily.

On August 30, 2001, the district court conducted Valdez's plea proceedings pursuant to Rule 11 of the Federal Rules of

Criminal Procedure. The court noted the terms of the plea agreement and also that "the parties have stipulated that the defendant conspired to possess with intent to distribute at least 50 kilograms but not less than 150 kilograms of cocaine, that being a base level of 36." (Tr. at 3.)[1] During the court's colloquy to determine Valdez's competence to withdraw his guilty plea, Valdez informed the court that he had attended up to the eighth grade in school and could read and write English. He also told the court that he was in good physical health and had not taken any medication in the last two days that would impair his ability to understand what was happening around him. After the court found Valdez competent, Valdez told the court that he was satisfied with his attorney's efforts and advice up to that point in time and that he had read the indictment and discussed it with his attorney. Valdez's attorney stated that he had no doubt that Valdez completely understood the charges against him. Among other things, the court told Valdez that by entering a guilty plea, he would be admitting his guilt and waiving certain rights, including the right to have the government "prove you guilty by competent evidence beyond a reasonable doubt." (Tr. at 14.) Valdez stated that he understood the rights he would be foregoing.

The court again asked Valdez whether he had read the plea agreement and gone over it with his attorney, to which Valdez responded affirmatively. The court then had the following exchange with Valdez:

> THE COURT: In paragraph No. 7 [of the plea agreement], it reads: The government and the defendant agree and stipulate to the following statement of facts and applicable guideline sentencing factors:

---

[1] The Joint Appendix does not contain a complete version of the plea proceedings. Citations to "Tr." are to the complete transcript obtained from the district court.

One, that the defendant conspired to possess with intent to distribute at least 50 but less than 150 kilograms of cocaine[,] base offense level 36. Do you understand that?

DEFENDANT VALDEZ: Yes, I do.

THE COURT: And do you agree and stipulate to that paragraph?

DEFENDANT VALDEZ: Yes, I do.

(Tr. at 17.) The court then told Valdez that it could not determine his sentencing guideline range with certainty, but that it expected to impose a sentence between 135 and 181 months, depending upon Valdez's criminal history. The court accepted the plea agreement and confirmed that Valdez had not been threatened or induced to plead guilty and had agreed to plead guilty after consultation with his attorney and family.

After accepting the plea agreement, the court asked the prosecutor to articulate the factual underpinning for Valdez's plea. The prosecutor stated, in relevant part:

With regard to Julio Valdez, the evidence will show that he … joined the conspiracy in question and he was … given and sold to him amounts of cocaine as set forth in the factual stipulation, 50 to 150 kilograms and that he received this cocaine from Mr. David Gonzalez and from other couriers who transported it to him in Adrian and Ohio and in Marion, Ohio. Mr. Valdez then resold the cocaine that he received in Adrian, Michigan, and in Marion, Ohio, and also had a set of or a group of persons that he sold to including Doug Ackerman and other persons named and unnamed in the indictment in question.

And the evidence would further show that … defendant[] knowingly and voluntarily joined the conspiracy knowing full well its objects and its purpose.

(Tr. at 22.) In response to the court's inquiries, Valdez stated that he had heard the prosecutor's statement and that he neither had any disagreement with it nor wished to add anything to it. Valdez then formally pleaded guilty to Count 1 of the indictment, which the court accepted. A presentence investigation was ordered.

On November 13, 2001, Valdez filed a motion to vacate his plea, claiming that he did not fully understand the crime to which he had pleaded guilty. In a handwritten affidavit, Valdez explained that he did not appreciate the distinction between "grams" of cocaine and the "kilograms" of cocaine referenced in his plea agreement and at the plea proceedings. On December 10, 2001, the court denied Valdez's motion to vacate his plea, reasoning that Valdez had not offered an explanation for the 75 days that had elapsed between Valdez's plea and his motion to withdraw. The court further noted that the circumstances surrounding the plea did not weigh in favor of a withdrawal because, *inter alia,* Valdez had stated at the plea hearing that he reads and writes English, that he had read and understood the indictment and that he had discussed the indictment with his attorney. Last, the court noted the "distinct possibility of substantial prejudice to the Government" if a withdrawal were allowed because "the recollections of witnesses may not be as fresh now" and because "substantial time and money would need to be spent in preparation for and execution of a trial."

Valdez's sentencing hearing took place on December 21, 2001. Valdez repeated his claim that he did not understand that he had pleaded guilty to possessing with intent to distribute kilogram (as opposed to gram) amounts of cocaine. The court rejected this argument, having already rejected his motion to withdraw his plea. The court then went over Valdez's presentence report which had indicated a base offense level of 36 and a criminal history category of 6, which put him in the guideline range of 235 to 293 months. The court reduced Valdez's criminal history category to 4 after accepting Valdez's argument that most of his criminal history

pertained to driving offenses. The court also reduced Valdez's base offense level by 3 levels for his acceptance of responsibility, reducing the sentencing range to 188 to 235 months. The court then sentenced Valdez to 192 months of imprisonment followed by a term of five years' supervised release. This appeal ensued.

## II

### A.   Valdez's Guilty Plea Was Knowing and Voluntary.

This Court may hear a direct appeal to a plea proceeding conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. *United States v. Van Buren,* 804 F.2d 888, 890 (6th Cir. 1986). Because Valdez attempted to withdraw his plea in the district court on the basis that it was not voluntary, the harmless error standard applies. *United States v. Vonn,* 535 U.S. 55, 62-63 (2002). The Court reviews such proceedings for substantial compliance with Rule 11, vacating a plea only when substantial rights of the defendant have been affected. *United States v. Stead,* 746 F.2d 355, 356-57 (6th Cir. 1984); *see also* Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights."). *Cf. Vonn,* 535 U.S. at 63 (noting that, in contrast to harmless error review, plain error review puts the burden of proving a deprivation of substantial rights on the defendant and further requires the defendant to persuade the court that the error "seriously affected the fairness, integrity or public reputation of judicial proceedings") (internal quotation marks, punctuation and citations omitted).

Rule 11 of the Federal Rules of Criminal Procedure requires that, before a court accepts a guilty plea, it must insure that the defendant understands, *inter alia,* "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G). *See also Henderson v. Morgan,* 426 U.S. 637, 645 (1976) ("[C]learly the plea could not be voluntary in the sense that it constituted an intelligent

admission that he committed the offense unless the defendant received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'") (quoting *Smith v. O'Grady,* 312 U.S. 329, 334 (1941)). Because a guilty plea involves the admission of "'all the elements of a formal criminal charge,'" *United States v. Syal,* 963 F.2d 900, 904 (6th Cir. 1992) (quoting *McCarthy v. United States,* 394 U.S. 459, 466 (1969)), the accused "must have knowledge of all those elements." *Id.*

"In a simple case the district court may need only to read the indictment and allow the defendant to ask questions about the charge." *Syal,* 963 F.2d at 904-05 (citing *Van Buren,* 804 F.2d at 892). "When the case is more complex, further explanation may be required. In any case the district court must be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *Id.* at 905 (citing *Van Buren,* 804 F.2d at 891). At a minimum, the defendant must understand the "critical" or "essential" elements of the offense to which he or she pleads guilty. *See Bousley v. United States,* 523 U.S. 614, 618-19 (1998) (observing that defendant's plea would be "constitutionally invalid" if "neither he, nor his counsel, nor the court correctly understood the *essential* elements of the crime with which he was charged") (emphasis added); *Henderson,* 426 U.S. at 647 n.18 ("There is no need in this case to decide whether notice of the true nature, or substance, of a charge always requires a description of every element of the offense; we assume it does not. Nevertheless, intent is such a *critical* element of the offense of second-degree murder that notice of that element is required.") (emphasis added).

Rule 11(b)(1)(G)'s requirement that a defendant understand the essential elements of the crime is integrally related to Rule 11(b)(3)'s requirement that the district court determine that the plea has a factual basis. "[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an

understanding of the law in relation to the facts." *McCarthy,* 394 U.S. at 466 (citation omitted). "Thus, in addition to directing the judge to inquire into the defendant's understanding of the nature of the charge and the consequences of his plea, Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea." *Id.* at 467. *See also* Fed. R. Crim. P. 11(b)(3) (requiring district court to determine whether there is a factual basis for a plea before entering judgment on plea).

Valdez pleaded guilty to violating 21 U.S.C. § 846 (conspiracy) and § 841(a) (knowingly or intentionally possessing cocaine with the intent to distribute). A violation of § 841(a) involving 50 to 150 *kilograms* of cocaine carries a maximum penalty of life imprisonment, 21 U.S.C. § 841(b)(1)(A), whereas an offense involving 50 to 150 *grams* of cocaine carries a maximum sentence of 20 years imprisonment. 21 U.S.C. § 841(b)(1)(C). Although the amount of cocaine involved in a violation of § 841(a) is an enhancement element of the offense, this element is treated no differently than the traditional elements of a § 841(a) violation for purposes of determining whether a plea was knowing and voluntary. *See United States v. Leachman,* 309 F.3d 377, 384 (6th Cir. 2002) (noting that the enhancement elements of a violation of § 841 are not to be treated differently "than the more traditional elements of the offense, such that their treatment is anything more than a mirror image of the treatment of the other elements"; holding that the right to have the amount of drugs proved to a jury beyond a reasonable doubt can be waived upon pleading guilty to a § 841(a) violation in the same way that the trial of the traditional elements can be waived). *Also cf. Harris v. United States,* 536 U.S. 545, 557 (2002) ("*Apprendi* [*v. New Jersey,* 530 U.S. 466 (2000)] said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime--and thus the domain of the jury--by those who framed the Bill of Rights."). Thus, prior to accepting Valdez's plea, the trial court should have ensured that Valdez

understood each element of the offense, including the essential element of drug quantity which increased the maximum penalty for the crime.

The facts of this case unquestionably show that the trial court ensured Valdez understood the drug quantity to which he pleaded guilty because the amount of drugs had been raised no less than four times before the trial court accepted Valdez's plea. In *Van Buren, supra,* this Court noted:

> Where the crime is easily understood, several courts have held that a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11.

804 F.2d at 892 (citations omitted).[2] Valdez's crime was "easily understood." This Court is not aware of any authority,

---

[2] *Van Buren* involved a defendant who had pleaded guilty to the unlawful use of a telephone to commit or facilitate a conspiracy to possess with intent to distribute cocaine. At his Rule 11 proceeding, the defendant had been read the indictment and then asked if there was anything further he wanted to know about the charge. This Court held that reading the indictment to the defendant and the defendant's subsequent admission of guilt was not sufficient to sustain the plea because "[t]o fully understand the charge against him, defendant must have understood what it meant to be a member of a conspiracy and to act in furtherance of that conspiracy." *Van Buren*, 804 F.2d at 892. The Court faulted the Rule 11 proceedings because the defendant had not been informed of the nature of the conspiracy and the district judge "did not inquire of defendant if he understood what a conspiracy was." *Id.* at 891. *Accord United States v. Bickerstaff,* No. 97-3449, 1998 WL 552834, at *4 (6th Cir. Aug. 13, 1998) (unpublished; vacating plea to drug conspiracy count due to lack of a sufficient factual basis under Rule 11 because the court did not explain to the defendant what it meant to be a member of a conspiracy and to act in furtherance of that conspiracy). This portion of the holding in *Van Buren* is not relevant in this case. Unlike the defendant in *Van Buren*, Valdez has not argued that his plea was involuntary on the ground that he did not understand what a conspiracy is or his role in the conspiracy. He has not contested the fact that he participated in a conspiracy, only the quantity of drugs attributable to him.

nor has Valdez pointed to any, suggesting that a common drug possession and distribution crime becomes complex simply when the amount of drugs is an element of the case. Valdez has provided this Court with no evidence or legal authority to overcome the common sense presumption that a competent layperson who can read and write in English, particularly a layperson who by his own admission is familiar with drug transactions, can understand the significant distinction – both in terms of mass and dollar value – between grams and kilograms of cocaine.

Since Valdez's crime was not complex, his guilty plea complied with Rule 11, as long as Valdez was provided with a sufficient summary of the charges against him. He was. At Valdez's plea hearing, the government summarized the drug conspiracy charges, stating that Valdez intentionally and knowingly had joined a conspiracy; purchased and received 50 to 150 kilograms of cocaine from David Gonzalez and from other couriers in Adrian, Michigan and Marion, Ohio; and resold the cocaine in Adrian, Michigan, and in Marion, Ohio, to Doug Ackerman and others. Valdez then expressed his agreement with the government's brief summary, thereby admitting his guilt. Valdez was informed on three other occasions (in the plea agreement and two other times during the plea colloquy) that he was being charged with possessing with the intent to distribute 50 to 150 "kilograms" of cocaine. On two of those occasions, Valdez confirmed the correctness of the amounts in response to the court's inquiries. Accordingly, Valdez's plea complied with Rule 11 because he was adequately informed of the easily understandable charges against him before pleading guilty.

This Court previously has applied *Van Buren* to similar facts as those presented by Valdez and declined to find a reversible Rule 11 violation. *See Leachman,* 309 F.3d at 384-86 (rejecting request to vacate plea of guilty to violations of §§ 841 and 846 because the amount of drugs was reflected in the defendant's indictment, the plea was not coerced, and the defendant "implicitly" had agreed to the amount of drugs

involved during a colloquy with the judge; holding that defendant "knowingly and voluntarily waived his constitutional rights to a jury and to proof beyond a reasonable doubt of the amount of drugs specified against him"); *United States v. Baez,* 87 F.3d 805, 810 (6th Cir. 1996) (holding that district court did not violate Rule 11 in accepting guilty plea for violation of §§ 841 and 846 because "the plea agreement's written description of the essential facts underlying the charge supports a finding of guilty" and because of "the defendant's express acknowledgement of the accuracy of the agreement's provisions"); *United States v. Edgecomb,* 910 F.2d 1309, 1313 (6th Cir. 1990) (finding no Rule 11 violation when defendants pleaded guilty to conspiracy to violations of §§ 841 and 846 after the government had read the facts constituting the conspiracy and the court had recited the count of the indictment and had confirmed that defendants understood the charges against them; holding that the district court was not required to specifically determine whether the defendant had understood the charged offense which was "simple enough for a lay person to understand").

Further, the Supreme Court has observed that as long as a defendant is provided a copy of his indictment prior to pleading guilty (as Valdez was), there is a "presumption that the defendant was informed of the nature of the charge against him." *Bousley,* 523 U.S. at 618 (citing *Henderson,* 426 U.S. at 650 (1976) (White, J., concurring)). Relying on the *Bousley* presumption, the Eighth Circuit Court of Appeals rejected a Rule 11 challenge identical to Valdez's – the district court's alleged failure to inform the defendant that the government would be required to prove the quantity of the controlled substances beyond a reasonable doubt. *United States v. Perez,* 270 F.3d 737, 739 (8th Cir. 2001). That court was persuaded by the facts that (a) the trial court had advised the defendant of the quantity of controlled substances alleged in the indictment and the sentencing range based on those quantities and (b) the defendant pleaded guilty to those amounts stated in the indictment. *Id.* at 740. Similarly, in

this case, Valdez was advised of the quantity of cocaine to which he pleaded guilty and the sentencing range for such a plea; Valdez then pleaded guilty.

Arguably, the Eighth Circuit's *Perez* is inapposite because it involved a plain error standard of review, whereas here the less rigorous harmless error standard applies due to Valdez's attempt to withdraw his guilty plea prior to sentencing. Two panels of the Ninth Circuit Court of Appeals recently reached opposite results on facts similar to *Perez* primarily because of the different standards of review applicable in those cases. *Compare United States v. Villalobos,* 333 F.3d 1070, 1074 (9th Cir. 2003) (applying harmless error standard because defendant challenged drug quantity at sentencing hearing; vacating plea of guilty to violations of §§ 841(a) and 846, even though the defendant had pleaded guilty and stipulated in his plea agreement to the drug amount; holding that district court violated Rule 11 by not informing the defendant that the government would have to prove the quantity of drugs, an element that would enhance the maximum penalty for the crime, beyond a reasonable doubt) *with United States v. Minore,* 292 F.3d 1109, 1120 (9th Cir. 2002) (applying plain error standard; holding that the district court erred under Rule 11 by failing to advise defendant that the government must prove the quantity of drugs beyond a reasonable doubt when the quantity would expose defendant to a higher maximum sentence, but affirming conviction and sentence because defendant admitted in his plea agreement, during his plea colloquy and at his sentencing hearing that he was responsible for the quantity of drugs); *see also United States v. Wallace,* 276 F.3d 360, 369 (7th Cir. 2002) (applying plain error review; noting that there was error in defendant's indictment and in the plea colloquy because he was not informed that the government would have to prove drug quantity beyond a reasonable doubt; affirming conviction and sentence because the defendant "never denied" his involvement with the drug quantity at issue).

If this Court were to follow Ninth Circuit precedent, Valdez would have a strong argument that, notwithstanding his repeated admission to possessing with the intent to distribute kilogram amounts of cocaine, he "could not properly evaluate the risks of entering the plea agreement, and could not intelligently and voluntarily plead guilty," because the district court did not inform him that the government needed to prove drug quantity beyond a reasonable doubt. *Villalobos,* 333 F.3d at 1075. But we sit in the Sixth Circuit, not the Ninth Circuit. To vacate Valdez's conviction under Ninth Circuit precedent would result in an irreconcilable conflict with the prior rulings of this Court. We therefore hold that the district court complied with Rule 11.

## B.   The District Court Did Not Abuse Its Discretion in Denying Valdez Permission to Withdraw His Guilty Plea.

The permission to withdraw a guilty plea prior to sentencing is a matter within the broad discretion of the district court. *United States v. Goldberg,* 862 F.2d 101, 103 (6th Cir. 1988). Accordingly, this Court reviews a district court's refusal to permit a defendant to withdraw his or her guilty plea for an abuse of discretion. *Id.* at 104.

A defendant may withdraw a guilty plea after the district court accepts a plea, but before sentencing, if the defendant can show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Court may consider the following factors, among others, in deciding whether to grant permission to withdraw a guilty plea: (1) whether the movant asserted a defense or whether he has consistently maintained his innocence; (2) the length of time between the entry of the plea and the motion to withdraw; (3) why the grounds for withdrawal were not presented to the court at an earlier time; (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and (5) potential prejudice to the government if the motion to

withdraw is granted. *Goldberg,* 862 F.2d at 103-04; *accord United States v. Bazzi,* 94 F.3d 1025, 1027 (6th Cir. 1996). "The factors listed are a general, non-exclusive list and no one factor is controlling." *Id.*

The district court denied Valdez's motion to withdraw his plea, reasoning that (1) Valdez had not offered an explanation for the 75 days that had elapsed between his plea and his motion to withdraw, (2) the circumstances surrounding the plea suggested that Valdez had understood the indictment, which he had discussed with his attorney, and (3) the government might be prejudiced by the stale recollections of witnesses and the need to expend time and money trying the case.

This Court disagrees with the district court's third stated reason, because there appeared to be no factual basis for the court to find that a few months' delay created by Valdez's guilty plea and subsequent withdrawal would have prejudiced the government. The government always has to spend time and money trying a case, so this "prejudice" is irrelevant on these facts. There also was no finding in the record that key witnesses were no longer available or that the few months' delay had hindered their ability to remember key events.

Nevertheless, the Court agrees with the first two reasons stated by the district court. First, Valdez's unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw. *See United States v. Durham,* 178 F.3d 796, 798-99 (6th Cir. 1999) ("The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea."); *Baez,* 87 F.3d at 808 ("The strongest factors supporting the district court's ruling are the sixty-seven day delay between the motion and the plea, and Baez's failure to justify this extensive delay.").

Second, the circumstances surrounding Valdez's plea strongly suggest that he did appreciate the crime to which he was pleading guilty and the likely sentence range to which he would be subjected. As noted above, Valdez's alleged criminal conduct was described at least four times prior to the entry of his guilty plea. On three of those occasions, Valdez affirmatively assented to the description of his conduct, including the quantity of drugs that he allegedly possessed. There is no dispute that Valdez was competent at the time of his plea, that he had not been coerced to plead guilty, that he read and understood English and that he had discussed the indictment and the plea with his attorney, who, according to Valdez, had provided him with satisfactory advice. Because Valdez has presented no persuasive reason for such a lengthy delay in bringing his motion to withdraw and because there is no evidence of unusual circumstances surrounding his plea, the Court sees no basis to hold that the district court abused its discretion.

## C. Valdez's Claim of Ineffective Assistance of Counsel Is Not Ripe for Judicial Review.

Valdez argues that he was denied effective assistance of counsel because his trial attorney failed to make clear that Valdez was pleading guilty to kilogram drug amounts rather than grams. In theory, claims of ineffective assistance of counsel can be raised on direct review. *Massaro v. United States,* 538 U.S. 500, ___, 123 S.Ct. 1690, 1696 (2003). Typically, direct review is appropriate where "trial counsel's ineffectiveness is so apparent from the record that appellate counsel will consider it advisable to raise the issue on direct appeal." *Id.* Here, Valdez's trial counsel's alleged ineffectiveness is not apparent from the record. There is little evidence in the record regarding what advice, if any, Valdez's trial counsel provided with regard to drug quantity, only Valdez's assertion that he did not understand the distinction between grams and kilograms. Such facts are more appropriately developed at the district court level. *See United States v. Barrow,* 118 F.3d 482, 494 (6th Cir. 1997) ("'The

more preferable route for raising an ineffective assistance of counsel claim is in a post-conviction proceeding under 28 U.S.C. § 2255,' whereby the parties can develop an adequate record.") (quoting *United States v. Carr,* 5 F.3d 986, 993 (6th Cir. 1993)). Accordingly, the Court declines to entertain the merits of Valdez's claim of ineffective assistance of counsel.

### III

For all the foregoing reasons, the Court **AFFIRMS** Valdez's conviction and sentence.