UNITED STATES of America,
Plaintiff,

v.

Bruce R. YOUNG, Defendant.

No. 3:00cr034(01).

United States District Court,
S.D. Ohio,
Western Division.

May 10, 2006.

Margaret Mary Quinn, United States Attorney's Office, Dayton, OH, for Plaintiff.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEAS (DOC. # 383)

RICE, District Judge.

Defendant Bruce R. Young ("Defendant" or "Young") was charged in Count 1 of the Indictment (Doc. # 5) with conspiring with others to possess with intent to distribute and to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. In Count 2 of the Indictment, Young was charged with using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). On September 25, 2003, Young entered guilty pleas to Counts 1 and 2 of the Indictment. On April 18, 2005, Defendant filed a *pro se* motion, requesting that he be permitted to withdraw his guilty pleas. *See* Doc. # 383. On May 12, 2005, and July 1, 2005, this Court conducted an oral and evidentiary hearing on that motion, and the parties have filed their post-hearing memoranda. *See* Docs. # # 400 and 401. The Court now rules upon that motion, beginning its analysis by reviewing the facts and circumstances surrounding Young's entry of the guilty pleas. The Court will then set forth the legal standards it must apply whenever ruling upon a motion to withdraw a guilty plea, following which it will apply those standards to those facts and circumstances.

The prosecution of Young is but one of many cases arising out of the same alleged conspiracy to distribute cocaine. Another such prosecution was *United States v. Jack Clark, et al.,* Case No. 3:99cr086 (*"Clark "*). Eleven defendants were charged in *Clark,* including Jack Clark, Daniel Nixon and Wanda Clark. A jury trial for those three individuals was conducted between October 11, 2002, and November 26, 2002.[1] Each of those three defendants was convicted of conspiring to possess with intent to distribute and to distribute more than five kilograms of cocaine.[2] As the trial date for this prosecution against Young approached, he began to feel a sense of obligation toward Wanda Clark.[3] As a consequence, in September, 2003, about two weeks before his trial was scheduled to commence, Young wrote to Margaret Quinn ("Quinn"), the Assistant United States Attorney in charge of this prosecution, indicating that he would enter a guilty plea to the charges against him, if the Government would dismiss the charges against Wanda Clark.

In September, 2003, Young was represented by Michael Murry ("Murry"), the fifth lawyer to have represented him in this prosecution.[4] The relationship between Young and Murry was not good. For instance, Young did not confer with his counsel before writing to the Assistant United States Attorney in charge of his prosecution, explaining that he was willing to plead guilty in exchange for favorable treatment of Wanda Clark. Young quite simply did not believe that Murry was representing him in an adequate, competent and professional manner. On the contrary, Young believed that Murry had been lying to him about the steps he (Murry) had been taking to represent him.

After he had written to Quinn, Young was transferred from the Preble County, Ohio, Jail, where he was then being housed, to the Federal Building in Dayton. He was taken to the holding area in the office of the United States Marshal, located on the eighth floor of that building. Quinn met with Young briefly in the Marshal's office and asked him whether he was serious about entering a guilty plea. After he had indicated that he was willing to enter a guilty plea in order to save Wanda Clark, as he had stated in his letter to Quinn, Young was returned to the Preble County Jail. Murry did not participate in this initial meeting between Quinn and Young.

A few days later, September 25, 2003, the day that he would enter his guilty pleas, Young was once again transported to the Federal Building in Dayton, where he met with Murry and Quinn in a conference room in the office of the United States Attorney. Deputies from the United States Marshal's office were also present in the conference room throughout that meeting. In addition, Young, Murry and Quinn were joined by Vincent Popp ("Popp"), the attorney who represents

---

1. The other eight defendants charged in *Clark* had entered guilty pleas.

2. Jack Clark and Daniel Nixon were also convicted of a number of other charged offenses. This Court directed a judgment of acquittal on the only other charge set forth against Wanda Clark.

3. Young referred to Ms. Clark as "Aunt Wanda," although she is not his aunt.

4. Young is currently being represented by his sixth attorney. In addition, the Court has denied Young the opportunity to represent himself, because of the unacceptable behavior in which he engaged in open court on December 18, 2000, and on July 20, 2001. *See United States v. Young,* 199 F.Supp.2d 697 (S.D.Ohio 2001).

Wanda Clark.[5] When he walked into the conference room, the Defendant questioned why Murry was there and indicated that he no longer represented him (Young). Young stated that he had fired Murry a number of months earlier. Throughout that meeting, Young would not permit Murry to give him legal advice.

During that meeting, Young was shown a statement of facts, upon which his guilty pleas would be based. Young said that the statement was not true. In response, Quinn explained that the Government believed that it could prove each of those facts, if this matter proceeded to trial, and that, when the Court asked him whether the statement of facts was true during a change of plea hearing, he would have to decide whether to state that they were or were not true.[6]

Later in the meeting, Young was shown a plea agreement, to which he objected because it contained a provision concerning acceptance of responsibility. In response to that objection, that provision was removed from the Plea Agreement (Doc. # 324). Before appearing in court for the change of plea hearing, Young, Murry, Quinn and J. Richard Chema ("Chema"), another Assistant United States Attorney, executed a Plea Agreement, which provided that Young would enter guilty pleas to Counts 1 and 2 of the Indictment and that, because Young wanted the Government to do all that was possible to reduce the sentencing exposure of Wanda Clark, it would file the attached Agreed Entry in her case.[7] *See* Doc. # 324. The Plea Agreement also provided that there had been no other promises or agreements. *Id.* at 3.

The Agreed Entry, which is attached to the Plea Agreement, provided that Wanda Clark would proffer, withdraw her request for a new trial, waive her right to appeal her conviction, and agree to relinquish any claim she might have to 3679 Roselawn Avenue. *Id.* at Attachment. That document also provided that, in exchange for Wanda Clark's performance of her obligations, the Government agreed to file a motion for substantial assistance on her behalf, in accordance with § 5K1.1 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(e), and not to pursue forfeiture of her residence at 144 Oaklawn Avenue in Dayton. *Id.* The mutual promises between the Government and Wanda Clark, set forth in the Agreed Entry, were expressly conditioned upon Young entering guilty pleas to Counts 1 and 2 in this prosecution. *Id.*

---

**5.** On either September 25th, or on the date of the initial meeting between Young and Quinn in the Marshal's office, Young also met privately with Wanda Clark. He had requested the meeting, which was arranged by Quinn in cooperation with Popp.

**6.** The first two sentences in this paragraph are uncontroverted, while the third sentence is based upon Quinn's testimony. Young, in contrast, testified that Quinn had told him to perjure himself, when he would be asked by the Court whether the statement of facts was true. The Court finds Quinn's testimony to be more credible. During the change of plea hearing, Young swore under oath that the statement of facts was true. During the evidentiary hearing regarding his request to withdraw his guilty plea, in contrast, he testified under oath that the statement of facts was not true. It is difficult to credit the testimony of an individual who has testified, under oath, to mutually exclusive propositions.

**7.** The Agreed Entry attached to Young's Plea Agreement was executed by Wanda Clark, her counsel Popp, Quinn, Chema and this Court. *See* Doc. # 324. The Agreed Entry was filed in the prosecution of Wanda Clark on September 25, 2003, the day upon which Young entered the guilty pleas. *See* Doc. # 924 in *United States v. Jack Clark, et al.,* Case No. 3:99cr86.

At 7:30 p.m., on September 25, 2003, Young appeared in open court for a change of plea hearing. As part of that hearing, the Plea Agreement (Doc. # 324) between Young and the Government was read. *See* Transcript of September 25, 2003, Change of Plea Hearing (Doc. # 330) at 46–50.[8] At the conclusion of the reading of the Plea Agreement, the Court asked Young whether the reading of the Plea Agreement corresponded with his understanding of it. *Id.* at 51. Although Young raised a question about the Government's obligation to file a motion for substantial assistance on behalf of Wanda Clark, he was satisfied with the Court's explanation that the Government's obligation in that regard was set forth in the Agreed Entry attached to his Plea Agreement. *Id.* at 51–52. Young also raised a concern about the requirement in the Agreed Entry that Wanda Clark proffer, wondering whether that requirement might make the Government's obligation to file a substantial assistance motion on her behalf illusory. *Id.* at 52–54. He was, however, satisfied with the Court's explanation that, if Wanda Clark were to refuse to talk to the Government, she would once again face a mandatory minimum sentence of 10 years, and that his guilty pleas would be vacated and he would go to trial. *Id.* at 54–55. Quinn agreed with the Court's explanation to Young. *Id.* at 55.

During the change of plea hearing, the Court read to Young the statement of facts upon which his guilty pleas were based.[9] *Id.* at 14–17. At the conclusion of the reading of those facts, Young agreed that the facts were correct and that they were true. *Id.* at 17 and 19. The Court also engaged in an extended discussion with Young concerning the rights he would be waiving by pleading guilty, and he stated that he understood each one of those rights. *Id.* at 35–43. In addition, he indicated that he understood that, under the Sentencing Guidelines, he faced a sentence of between 31 years, 10 months, and 37 years. 3 months, and that he had no questions concerning that sentencing range. *Id.* at 22. Young also stated that he understood that, in accordance with the pertinent statutes, he would be sentenced to a term of incarceration of between 20 years and life. *Id.* at 27–28. In addition, Young acknowledged that he had signed the Plea Agreement, that it was acceptable to him and that no one had made any promises to him. *Id.* at 55–56 and 57. Young also indicated that he was pleading guilty voluntarily. *Id.* at 57. When the Court asked him whether he was pleading guilty because he was guilty, Young said "yes", while shaking his head as if to say "no." *Id.* The Court pointed out Young's seemingly contradictory response to him, and he said "[y]es. I'm guilty." *Id.* At the conclusion of the Court's colloquy with Young, he entered guilty pleas to Counts 1 and 2 of the Indictment. *Id.* at 59–60.

Shortly after having entered his guilty pleas, Young wrote a letter to Barbara Uhling ("Uhling"), the probation officer assigned to draft his presentence investigation report ("PSIR"), in which he stated that he was innocent of the charges to which he had entered guilty pleas and that he had been coerced into pleading guilty, in an effort to help prevent Wanda Clark from being sentenced to prison. That portion of Young's letter has been included in the PSIR. In October, 2003, Young sent

8. Three copies of that Transcript have been filed. *See* Docs. # # 328–30. This Court cites to Doc. # 330, since it is the only copy of that Transcript that was signed by the court reporter.

9. This was the same statement of facts that Young had told Quinn was not true.

correspondence to this Court, expressing similar statements. *See* Doc. #361. However, in all of that correspondence, Young indicated that he was not attempting to withdraw his guilty pleas. Moreover, during a telephone conference call which this Court conducted with counsel on February 9, 2005, shortly after Young's current counsel had been appointed to represent him, that attorney told the Court that Young did not want to withdraw his guilty pleas. The Motion to Withdraw Guilty Pleas (Doc. #383) at issue herein was filed by the Defendant, *pro se*, on April 18, 2005.

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a District Court may permit a defendant to withdraw his guilty plea, before sentence has been imposed, if he "shows any fair and just reason." [10] This Rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone." *United States v. Alexander,* 948 F.2d 1002, 1004 (6th Cir.1991), *cert. denied,* 502 U.S. 1117, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992). It is not designed "to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *Id.* (internal quotation marks and citation omitted). In *United States v. Spencer,* 836 F.2d 236 (6th Cir.1987), the Sixth Circuit announced a five-factor test to be applied when a defendant moves to withdraw his plea before he has been sentenced. The Sixth Circuit subsequently added a sixth factor to the calculus. In *United States v. Durham,* 178 F.3d 796 (6th Cir.), *cert. denied,* 528 U.S. 1033, 120 S.Ct. 559, 145

L.Ed.2d 434 (1999), the Sixth Circuit reviewed the applicable factors:

This Court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Bashara,* 27 F.3d 1174, 1180 (6th Cir.1994). Durham moved to withdraw his plea of guilty to the escape, alleging that the government had coerced him into pleading guilty. The district court denied the motion in light of this Court's decision in *United States v. Spencer,* 836 F.2d at 239–40, finding that Durham had not shown a "fair and just reason" for withdrawal.

Federal Rule of Criminal Procedure 32(e) provides that a court may permit a defendant to withdraw a plea prior to sentencing if he shows any "fair and just reason" for the withdrawal. Fed. R.Crim.P. 32(e). In *Spencer,* 836 F.2d at 239–40, this Court promulgated five factors for a court to consider in determining whether to grant a motion to withdraw: (1) the length of time between the guilty plea and the filing of the motion to withdraw, (2) the defendant's reason for not presenting the grounds earlier, (3) whether the defendant has asserted or maintained his innocence, (4) the circumstances surrounding the plea, the nature and background of the defendant, and whether the defendant has admitted guilt, and (5) any potential prejudice to the government, although a showing of prejudice is not necessary. In *United States v. Pluta,* 144 F.3d 968, 973 (6th Cir.1998), this Court added the defendant's prior experience with the criminal justice system as a sixth factor.

---

**10.** Since this portion of Rule 11(d) was previously set forth as Rule 32(e) of the Federal Rules of Criminal Procedure, some of the decisions from the Sixth Circuit, cited by this Court herein, refer to Rule 32. The recodification of Rule 32(e) in Rule 11, however, has not resulted in any substantive change to that provision of the Federal Rules of Criminal Procedure. *See United States v. Cinnamon,* 2004 WL 2318104 (6th Cir.2004).

*Id.* at 798–99. *Accord, United States v. Valdez,* 362 F.3d 903, 912 (6th Cir.2004). *See also, United States v. Mader,* 251 F.3d 1099, 1105 (6th Cir.2001) (listing the defendant's nature and background as an additional factor, rather than as part of another factor); *United States v. Bashara,* 27 F.3d 1174, 1181 (6th Cir.1994) (same). The defendant has the burden of proving that the withdrawal of his plea is justified. *United States v. Baez,* 87 F.3d 805, 807 (6th Cir.), *cert. denied,* 519 U.S. 973, 117 S.Ct. 405, 136 L.Ed.2d 319 (1996); *United States v. Stephens,* 906 F.2d 251, 252 (6th Cir.1990). Whether to permit a defendant to withdraw his guilty plea is committed to the discretion of the District Court. *United States v. Lineback,* 330 F.3d 441, 443 (6th Cir.2003).

In his post-hearing memorandum (Doc. # 400), Young focuses primarily upon the first factor. For purposes of creating a complete record, the Court will analyze the six factors identified by the Sixth Circuit, addressing them in the above order. The Court will, however, address the fourth and sixth factor together.

*1. Length of Time between Guilty Plea and Filing of Motion to Withdraw*

More than 18 months passed between the entry of guilty pleas by Young and the date upon which he moved to withdraw those pleas. In *United States v. Alexander,* 948 F.2d 1002 (6th Cir.1991), *cert. denied,* 502 U.S. 1117, 112 S.Ct. 1231, 117 L.Ed.2d 465 (1992), the Sixth Circuit discussed the length of time between the entry of the guilty plea and the filing of a motion to withdraw that plea:

> Courts have noted that the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant "to make a tactical decision to enter a plea, wait several weeks, and then

> obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Carr,* 740 F.2d 339, 345 (5th Cir.1984), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). For these reasons, courts have denied motions to vacate entered after any substantial time has passed after the entry of the plea. *See, e. g., Carr,* 740 F.2d 339 (22 days); *Spencer,* 836 F.2d 236 (five weeks). *Alexander's delay of almost five months is certainly beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate.*

*Id.* at 1004 (emphasis added). In *Valdez,* the Sixth Circuit held that a 75 day delay, *alone,* justified the decision of the District Court to deny the defendant's request to withdraw his guilty plea. 362 F.3d at 912–13. *See also, Durham,* 178 F.3d at 798 (terming seventy-seven day delay the strongest factor supporting the district court's denial of the defendant's motion to withdraw his plea); *United States v. Baez,* 87 F.3d 805, 807 (6th Cir.1996) (calling a sixty-seven-day delay the strongest factor supporting its denial of the motion to withdraw); *United States v. Goldberg,* 862 F.2d 101, 104 (6th Cir.1988) (terming a fifty-five-day gap a "lengthy delay").

Based upon *Valdez,* the passage of more than 18 months between the entry of his guilty pleas and the filing of his motion is a sufficient reason, alone, to warrant the overruling of the Defendant's motion. Nevertheless, he argues that a number of reasons should compel the Court to overlook that passage of time. *See* Doc. # 400 at 9. None of those reasons causes this Court to conclude that, despite having waited more than 18 months, the Defendant may nevertheless withdraw his guilty plea.

*First,* Young argues that he made it clear within days of the entry of his guilty

pleas that he believed himself to be innocent of the charges to which he plead guilty. Although he made such statements in his correspondence with Uhling and this Court, he also indicated in that correspondence that he was not attempting to withdraw his guilty pleas. *See e. g.,* Doc. # 361 at 2 ("I am not attempting to withdraw my plea."). In addition, during a conference call the Court conducted with counsel in February, 2005, more than 16 months after Young had entered his guilty pleas, the attorney currently representing him indicated that his client would not seek to withdraw those pleas. Therefore, Young's statements in his correspondence that he was innocent do not cause this Court to overlook the passage of more than 18 months between the entry of the guilty pleas and the filing of the request to withdraw those pleas.[11]

*Second,* Young focuses upon the fact that he was effectively without representation for a long period of time after he had entered the guilty pleas. Murry continued to represent Young, by filing objections to his client's PSIR. Young's sentencing did not take place on the scheduled date of December 11, 2003. From then until January of 2005, Young was effectively without legal representation.[12] Nevertheless, that lack of representation does not cause this Court to overlook the more than 18 month delay. The record establishes beyond dispute that Young understood that he could move to withdraw his guilty plea, given that he indicated in his correspondence to Uhling and the Court that he was not attempting to do so.[13]

Therefore, the delay of more than 18 months, alone, causes this Court to conclude that Young should not be permitted to withdraw his guilty pleas.

### 2. Defendant's Reason for not Presenting the Grounds Earlier

Young has not presented a reasonable explanation for his failure to move to withdraw his pleas for more than 18 months after he had entered them. Therefore, this factor does not support Defendant's motion.

### 3. Whether the Defendant Has Asserted or Maintained His Innocence

Even though Young wrote to Uhling and the Court shortly after entering his guilty pleas, proclaiming his innocence, this Court cannot find that he has maintained his innocence. The Sixth Circuit has indicated that a defendant's "post plea claims of innocence mock his courtroom declarations of guilt under oath." *United States v. Mise,* 2001 WL 1356235, at *5 (6th Cir.2001) . *Accord United States v. Ford,* 1994 WL 567593 (6th Cir.1994); *United States v. Robinson,* 1994 WL 287388 (6th

---

**11.** In *Bashara,* the Sixth Circuit held that the date upon which the defendant moved to withdraw his guilty plea is dispositive, rather than the date upon which he initially complains about having entered a guilty plea. 27 F.3d at 1181. Therefore, the Defendant's post-plea protestations of his innocence do not equate to moving to withdraw his guilty pleas.

**12.** During that period of delay, this Court attempted unsuccessfully to obtain an attorney who would be willing to represent the Defendant. In addition, the Court attempted to speak with him directly, during two on the record telephone conference calls with Government's counsel and Murry. The purpose of those calls was to explain to Young the status of his prosecution. However, both times, Young, who was then incarcerated in the jail in Grant County, Kentucky, refused to come out of his cell to participate in the conference call.

**13.** It bears noting that Young has filed numerous *pro se* motions throughout this prosecution. Indeed, the motion to withdraw his guilty pleas was made *pro se.*

Cir.1994). At the change of plea hearing, Young admitted his guilt under oath. Therefore, this factor does not favor withdrawal of Young's guilty pleas.

### 4. The Circumstances Surrounding the Plea, the Nature and Background of the Defendant, Whether He Has Admitted Guilt and His Prior Experience with the Criminal Justice System

The guilty pleas were entered in this prosecution under unusual circumstances. According to Young, he acted out of a sense of selfless gallantry in order to minimize the amount of time Wanda Clark would be incarcerated. If Young had not entered such pleas, she would have been sentenced to a minimum of 10 years incarceration. When he entered those pleas, Young's relationship with Murry had so deteriorated that the Defendant would not permit his counsel to give him legal advice, during his meeting with prosecutors, before the change of plea hearing, although Murry was present at the meeting. The Defendant argues that the deterioration of his relationship with Murry establishes that he entered his guilty pleas without effective assistance of counsel. According to Young, without an effective working relationship with Murry, the representation he provided at the change of plea hearing must have fallen below the standard of objective reasonableness. This Court does not agree.

As an initial matter, a defendant asserting a claim of ineffective assistance of counsel arising out of the entry of a guilty plea must establish both prongs of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), i.e., performance below the objective standard of reasonableness and prejudice. *Hill v. Lockhart*, 474 U.S. 52, 56–57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To establish prejudice under those circumstances, the defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have [plead] guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59, 106 S.Ct. 366. Simply stated, Young has failed to establish that he would not have entered the guilty pleas, if his relationship with Murry had been better on September 25, 2003, to the point that he would have been willing to listen to legal advice from his counsel. Moreover, since Young did not permit Murry to give him advice concerning the sentencing ramifications of guilty pleas or the rights he was waiving before the change of plea hearing, it bears emphasis that Young voluntarily chose to prevent Murry from being an active participant in the events that led to his entering the guilty pleas.

Accordingly, the Court cannot conclude that Young was acting without effective assistance of counsel when he entered the guilty pleas on September 25, 2003.[14]

In addition, it bears emphasis that Young was not, on that date, a neophyte when it came to the criminal justice sys-

---

**14.** Defendant also argues that his testimony during the evidentiary hearing, to the effect that he believed that the change of plea process was being done with a wink and a nod, demonstrated that he did not understand the finality and import of that process, thus evidencing his assertion that he was acting without effective assistance of counsel at the time. *See* Doc. # 400 at 11. Since Young's testimony more than 19 months after the change of plea hearing is belied by what occurred during it, that testimony does not support his premise that he was acting without counsel. During the change of plea hearing, Young demonstrated a complete understanding of the import and finality of that process. This is amply demonstrated by his questions concerning the motion for substantial assistance to be filed on behalf of Wanda Clark and his concern that the requirement that she proffer could render the Government's obligation to file such a motion illusory.

tem. He has been accused and convicted on guilty pleas of many offenses. *See* II Transcript of May 12, 2005, Evidentiary Hearing (Doc. # 396) at 10–16. In addition, throughout this prosecution, Young has filed many *pro se* motions and written numerous letters to the Court. His motions and correspondence demonstrate that, for a layperson, he has a significant understanding of the legal system.

Therefore, these factors do not favor Defendant's request to withdraw his guilty pleas.

### 5. *Potential Prejudice to the Government*

If Young is permitted to withdraw his guilty pleas, the Government faces a significant potential for prejudice. The Government's *quid pro quo* for Young's guilty pleas was its agreement to file the Agreed Entry in the prosecution of Wanda Clark. In exchange, the Government would obtain Young's guilty pleas. That Entry has been filed. Although its viability is expressly conditioned upon Young pleading guilty to Counts 1 and 2 of the Indictment in this case, the possibility that Young would obtain leave of court to withdraw those pleas is not mentioned in that Agreed Entry. As a consequence, the argument exists that the Government would remain obligated to file a motion for substantial assistance on behalf of Wanda Clark, even if this Court were to permit the Defendant to withdraw his guilty pleas. Under such circumstances, Young would receive the benefit he was promised as a result of the Plea Agreement, a more lenient sentence for Wanda Clark, while the Government would be denied that which it had sought, i.e., Young's guilty pleas. Therefore, this factor does not favor the withdrawal of the guilty pleas.

Since none of the pertinent factors favors the withdrawal of Young's guilty pleas, the Court overrules Defendant's

Motion to Withdraw Guilty Pleas (Doc. # 383).