File Name: 05a0920n.06
Filed: November 18, 2005

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 04-4463

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee*,

v.

DONTA M. MCCOY,

    *Defendant-Appellant*.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE:     DAUGHTREY and COLE, Circuit Judges; HEYBURN, Chief District
                  Judge[*]

**PER CURIAM.** Appellant Donta McCoy ("McCoy") pleaded guilty to being a felon in

possession of ammunition. He appeals the district court's denial of: 1) his motion to suppress

evidence on Fourth Amendment grounds; and 2) his motion to dismiss pursuant to the Speedy Trial

Act (18 U.S.C. § 3161 *et seq*.). McCoy also appeals the district court's refusal to allow him to

withdraw his guilty plea and its finding that his plea was knowingly and voluntarily made. The

underlying circumstances presented several difficult issues for the district judge. For the following

reasons, we **AFFIRM** the district court's denial of McCoy's motion to suppress evidence and his

motion to dismiss the indictment, and **REMAND** this case for a new consideration of McCoy's

---

[*] The Honorable John G. Heyburn II, Chief United States District Judge for the Western
District of Kentucky, sitting by designation.

motion to withdraw his guilty plea consistent with this opinion.

**I.**

On October 12, 2003, Officers Demeco Anderson and Darrell Beavers of the Cincinnati Police Department were dispatched to the J&W Market at 3515 Burnet Avenue in Cincinnati, Ohio, in response to a 911 call reporting that a black male in his thirties, wearing a camouflage jacket and blue jean shorts, was carrying a gun and had threatened someone. The uniformed officers approached the address slowly in their marked police cruiser, looking for someone matching that description. While driving to the scene, they passed between fifty and sixty black men in a two-to-three block area.

Approximately three houses from the market, the officers spotted McCoy, a black male who appeared to be in his thirties and was wearing blue jean shorts and a camouflage jacket. Officer Beavers angled the cruiser towards McCoy and stopped. Officer Beavers exited with his gun drawn and asked McCoy to come to a halt. McCoy immediately began to run. The officers gave chase on foot. After detaining him, the officers searched McCoy and found a loaded handgun and twenty-two rounds of ammunition. The officers placed McCoy under arrest.

On January 7, 2004, a federal grand jury indicted McCoy on one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). McCoy moved to suppress evidence of the handgun and ammunition on the grounds that he was stopped and searched illegally. The district court scheduled both the suppression hearing and the trial for March 23, 2004. On that date the district court conducted a hearing and then denied the motion to suppress. McCoy then orally moved to have his indictment dismissed pursuant to the Speedy Trial Act, 18 U.S.C. § 3161,

*et seq*. The district court denied that motion as well.

Before proceeding to trial, McCoy's counsel and the United States Attorney informed the court that McCoy wished to plead guilty to the charge in the indictment. A change-of-plea colloquy followed, during which McCoy's counsel informed the court that McCoy requested appointment of new counsel or a continuance to obtain new counsel. The court refused to grant the continuance or to appoint him new counsel at that time. As the colloquy progressed, McCoy informed the court that he was not satisfied with the advice he had received from his counsel. Nevertheless, McCoy pleaded guilty to the charges.

Thereafter, McCoy asked his attorney to withdraw the guilty plea. His attorney, however, did not act on this request. On April 28, 2004, McCoy's attorney did file a motion to withdraw as counsel, stating that McCoy was no longer cooperating with him and he could no longer effectively represent him. McCoy's attorney notified the district court that McCoy wanted to withdraw his guilty plea, but he filed no such motion. On May 3, the district court granted McCoy's attorney's motion to withdraw and held "the facts of this case, combined with Defendant's failure to cooperate with Counsel and with the Probation Department, militate against the Court permitting Defendant to withdraw his guilty plea."

On May 19, 2004, the district court appointed Clyde Bennett II, McCoy's current counsel, to represent him. On August 6, 2004, McCoy filed a motion to withdraw his guilty plea on the ground, in part, that his plea was not entered into knowingly and voluntarily. The district court denied the motion. This timely appeal followed.

**II.**

We have jurisdiction pursuant to 28 U.S.C. § 1291. In reviewing a denial of a motion to suppress evidence, we review the district court's factual determinations under a clearly erroneous standard, but we review that court's legal conclusions *de novo*. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). We review the district court's application of the Speedy Trial Act *de novo*. *United States v. Dunbar*, 357 F.3d 582, 590 (6th Cir. 1994). Finally, we review the denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003) (citing *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996)). "A district court abuses its discretion 'when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Id*. (quoting *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)).

### III.

McCoy challenges the propriety of the officers' stop and search under *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, an officer must justify the stop and subsequent search with "articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop. *Id*. at 21.

In this case, the 911 caller provided the officers with specific identification of the race, approximate age, and attire of a suspect. The caller also alerted the officers that the suspect possessed a gun and had threatened someone. On their way to the J&W Market, the officers spotted McCoy, who, as the district court concluded, matched that description "perfectly." McCoy argues that the description was not detailed enough to warrant the officers stopping him. However, the officers passed fifty to sixty males of the same race and stopped McCoy only a few houses from the

market and no one else, because only McCoy fit the caller's description. The district court was correct, therefore, to conclude that the officers had an articulable basis for the stop.

McCoy's decision to flee further supported the stop. "Headlong flight – wherever it occurs – is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainty suggestive of such." *Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000). "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id*. at 125. The description and the flight created probable cause to support the arrest. *See Weaver v. Shadoan*, 340 F.3d 398, 409 (6th Cir. 2003); *United States v. Doston*, 49 F.3d 227, 231 (6th Cir. 1995). It follows that the search of McCoy's person incident to his lawful arrest was permissible. *United States v. Montgomery*, 377 F.3d 582, 586 (6th Cir. 2004) (citing *United States v. Robinson*, 414 U.S. 218, 234-35 (1973)). *See also*, *Montgomery*, 377 F.3d at 586 (citing *Rawlings v. Kentucky*, 448 U.S. 98, 110-11 (1980)).

We therefore AFFIRM the district court's denial of McCoy's motion to suppress evidence of the handgun and ammunition.

## IV.

McCoy argues that the district court was required to dismiss the indictment under the Speedy Trial Act, because his suppression motion did not actually delay the trial. The Speedy Trial Act requires that a defendant be tried within seventy days of the filing of the indictment or his first appearance before a judicial officer, whichever date is later. 18 U.S.C. § 3161(c)(1). When calculating the seventy days, however, the time between when a defendant files a motion that

requires a hearing and when the hearing is held is "excluded." 18 U.S.C. § 3161(h)(1)(F).[1]

McCoy argues that, under a plain language reading of the Speedy Trial Act, only motions that actually "delay" the proceedings are excluded. He argues that, because the trial was to begin the same day, and immediately after his suppression hearing, his motion did not actually delay the proceeding. We respectfully disagree. "[T]he time between the filing of [defendant's] motion and the conclusion of the hearing is *automatically* excluded." *Greenup v. United States*, 401 F.3d 758, 766 (6th Cir. 2005) (emphasis added) (citing *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988)). "Congress intended subsection (F) to exclude from the Speedy Trial Act's 70-day limitation all time between the filing of a motion and the conclusion of the hearing on that motion" regardless of why a hearing was set for a particular date. *United States v. Keefer*, 799 F.2d 1115, 1121 (6th Cir. 1986) (quoting *Henderson v. United States*, 476 U.S. 321, 330 (1986)).

The time during which McCoy's motion was pending, from February 11, 2004, to March 23, 2004, is automatically excluded from the speedy trial calculus. That the trial was also scheduled for March 23 is not relevant. We automatically exclude from the Speedy Trial calculus the days McCoy's motion was pending. Under these rules the district court properly denied McCoy's motion to dismiss.

---

[1] 18 U.S.C. § 3161(h)(1)(F) requires:

[t]he following periods of delay shall be excluded . . . in computing the time within which the trial of any such offense must commence: (1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to–
(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

**V.**

McCoy argues that the district court abused its discretion in denying his motion to withdraw his guilty plea. We review a district court's denial of a motion to withdraw a guilty plea under an 'abuse of discretion' standard. *United States v. Lineback*, 330 F.3d 441, 443 (6th Cir. 2003). A district court abuses its discretion "when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Lineback*, 330 F.3d at 443 (citing *United States v. Spikes*, 158 F.3d 913, 927 (6th Cir. 1998)). We recognize that the circumstances here and judgments required are particularly difficult for any district judge and review with that in mind.

Under Rule 11, a defendant must knowingly and voluntarily enter his guilty plea. *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988). Where a defendant seeks to withdraw a guilty plea after the court has accepted the plea but before sentencing, a defendant must provide a "fair and just" reason for the withdrawal. Fed. R. Crim. P. 11(d)(2). In *United States v. Bashara*, 27 F.3d 1174 (6th Cir. 1994), the Sixth Circuit enumerated several factors a district court may assess in evaluating whether a defendant has established a "fair and just" reason for withdrawal, namely: 1) the amount of time that elapsed between the plea and the motion to withdraw it; 2) the presence or absence of a valid reason for failure to move for withdrawal earlier in the proceeding; 3) whether the defendant has asserted or maintained his innocence; 4) the circumstances underlying the entry of the guilty plea; 5) the defendant's nature and background; 6) the degree to which the defendant has had prior experience with the criminal justice system; and 7) potential prejudice to the government if the motion to withdraw is granted. *Bashara*, 27 F.3d at 1180-81.

In its order denying defendant's motion to withdraw his guilty plea, the district court accurately noted that it may consider the length of time between the entry of the plea and the motion to withdraw. *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004). The court noted that in *Valdez*, (involving a 75 day delay) and in *United States v. Durham*, 178 F.3d 796 (6th Cir. 1999), (involving a 77 day delay), this Court held that the respective district courts did not abuse their discretion in denying the defendants' motions to withdraw. The district court correctly stated that over 130 days elapsed between McCoy's guilty plea and his motion to withdraw the plea. As it turns out, however, in his Motion for Leave to Withdraw as Counsel, filed on April 28, 2004, Alvertis M. Bishop, McCoy's former counsel, acknowledged to the court that McCoy had "notified the undersigned in writing that he wishes to withdraw the plea of guilty . . . ." JA 20. Therefore, McCoy effectively notified the court within 30 days after the plea hearing that he wished to withdraw his guilty plea.

Consequently, the district court's comparison of this case to *Valdez* and *Durham* is not particularly convincing. In those instances, the defendants failed to provide any explanation for the delays between their guilty pleas and the motions to withdraw. Here, by contrast, McCoy notified Mr. Bishop that he wished to withdraw his plea, and Mr. Bishop acknowledges that statement in his motion to withdraw as counsel. Further, Mr. McCoy's new counsel filed the motion to withdraw the plea within approximately 45 days of being appointed as counsel. Consequently, we conclude that under *Bashara*, the court improperly relied upon and weighed the 133 day delay in considering whether McCoy provided a "fair and just" reason for withdrawal.

McCoy also says that his plea was not knowing and voluntary. A review of the record shows

McCoy expressed dissatisfaction with the advice he received from his counsel while he was entering his guilty plea. For example, Mr. Bishop stated to the court that McCoy "would like it placed in the record that he requested that I withdraw as counsel, that that request was denied and that that is part of his reason in going forward." JA 54. In addition, in response to a question from the court as to whether he was satisfied with the advice of counsel, McCoy replied "No, not really." JA 57. Such discomfort is not determinative of whether a plea was knowing and voluntary. But it must be considered in combination with other factors, as the aim of Rule 11(d) is to allow "a hastily entered plea made with unsure heart and confused mind to be undone . . . ." *Bashara*, 27 F.3d at 1181 (citations omitted).

In these circumstances we doubt that McCoy's guilty plea can be considered knowing and voluntary in the absence of an explicit waiver of certain constitutional rights. A guilty plea can only be valid if the defendant enters into it intelligently and voluntarily, which may be determined from the totality of the circumstances. *Abdus-Samad v. Bell*, 420 F.3d 614 (6th Cir. 2005) (citing *Brady v. United States*, 397 U.S. 742, 747 (1970)). A guilty plea entails the waiver of "(1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers." *Id.*, citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Rule 11 specifically requires a judge to ask a defendant whether he waives these rights when taking a guilty plea.[2]

_____

[2] Rule 11(b)(2) requires the court to put the defendant under oath, "address the defendant personally in open court," and:

> inform the defendant of, and determine that the defendant understands the following:
> (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;
> (B) the right to plead not guilty, or having already so pleaded, to persist in that

When a defendant challenges the constitutionality of his plea, the government can generally show that the plea was entered knowingly and voluntarily by production of a transcript of the lower court proceedings. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). As the Supreme Court noted in *Boykin*, "we cannot presume a waiver of these three important federal rights from a silent record." *Boykin*, 395 U.S. at 243. The transcript of the plea colloquy contains no evidence that McCoy was advised of these rights or that he waived them expressly. We conclude that the combination of these concerns and omissions amount to an erroneous weighing of the *Bashara* factors in determining whether McCoy presented a "fair and just" reason for withdrawal under Rule 11(d). For these reasons, we REMAND for a new consideration of McCoy's motion to withdraw his guilty plea in accordance with this opinion. In all other respects we affirm the decisions of the district court.

---

plea;
(C) the right to a jury trial;
(D) the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceeding;
(E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;
(F) the defendant's waiver of these trial rights if the court accepts a plea of guilty;
(G) the nature of each charge to which the defendant is pleading;
(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; . . . .