NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0600n.06

No. 08-6323

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

WILLIAM PEPPERS,

    Defendant-Appellant.

_____/

**FILED**
**Sep 09, 2010**
LEONARD GREEN, Clerk

On Appeal from the United
States District Court for the
Western District of
Tennessee at Memphis

**Before:**    **GUY, MOORE, and GRIFFIN, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**   Defendant William Peppers appeals from the denial of his motion to withdraw his guilty plea with respect to two counts of a four-count indictment. Following an evidentiary hearing, the district court denied defendant's motion for the reasons set forth in its August 19, 2008 Order. After review of the record and consideration of the arguments presented on appeal, we find no abuse of discretion and affirm.

## I.

    The charges stemmed from defendant's several-hour rampage following a domestic dispute on September 13, 2006. Defendant's conduct included using an AK-47 to shoot out the tires of his wife's car, shoot at a neighbor who came out to investigate, and commit two

armed carjackings and an armed robbery of one carjacking victim. Specifically, after chasing the neighbor, defendant came upon Kevin Phillips and Leslie Sanders, who were seated in an El Camino. Defendant forced them out at gunpoint, demanded money from Phillips, and fled with the car and $270 in cash. A short time later, defendant abandoned that car and continued on foot until he saw Isaac Sawyer, whom he knew, driving an Impala. Defendant demanded, again at gunpoint, that Sawyer drive him to another location, where the defendant got out. When apprehended nearby, defendant still had the keys to the El Camino.

The indictment, filed February 27, 2007, charged defendant with two counts of carjacking in violation of 18 U.S.C. § 2119 (counts 1 and 3), and two counts of using or carrying a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (counts 2 and 4). After several adjournments, trial was scheduled for the first week of the criminal trial rotation beginning on Monday, January 7, 2008. The prosecutor was notified on January 4 that defendant would plead guilty.

On January 7, 2008, defendant signed the plea agreement and entered guilty pleas to counts 1 and 4. These two counts, which were read to the defendant during the plea hearing, charged defendant with the second carjacking (count 1) and the firearm offense related to the first carjacking (count 4). During the colloquy with defendant, the district court inquired into the voluntariness of the plea, apprised defendant of the rights he would be waiving, and determined that there was a factual basis for his guilty plea.[1] Defendant's plea was accepted, the matter was referred for a presentence report (PSR), and sentencing was set for April 7,

---

[1]Although the plea agreement contained a waiver of appeal rights, the government makes no claim that the issues raised in this appeal are covered by that waiver.

2008. Objections were filed, sentencing was adjourned, and substituted counsel took over defendant's representation on April 15, 2008. Sentencing was adjourned several more times at the request of counsel.

On June 18, 2008, defendant informed the court that he might seek to withdraw his plea and additional time was allowed for him to confer with counsel. Defendant's motion to withdraw the guilty plea, filed on July 24, 2008, was based on defendant's assertion that he was confused, that he pleaded guilty on the advice of counsel, and that he thought he was pleading guilty to offenses relating to only one of the carjackings. After an evidentiary hearing, the district court denied the motion for the reasons set forth in the Order filed on August 19, 2008. Defendant was sentenced on October 22, 2008, to a below-guideline sentence of 120 months for the carjacking, to be followed by a consecutive mandatory term of 84 months for the § 924(c) conviction. This appeal followed.

## II.

To withdraw a guilty plea before sentencing, the defendant bears the burden to demonstrate "a fair and just reason for requesting the withdrawal." FED. R. CRIM. P. 11(d)(2)(B). The purpose of this provision is to allow a "'hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.'" *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007) (citation omitted).

This court has developed a multi-factor balancing test to guide the decision on such a motion. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). The factors we have identified are as follows:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* (citation omitted). This list of factors is not exclusive, no one factor is dispositive, and the relevance of each factor will vary according to the circumstances. *Id.*; *see also United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006) (noting that government need not establish prejudice unless the defendant has shown a fair and just reason for withdrawal).

The district court's denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion. *Haygood*, 549 F.3d at 1052. A district court abuses its discretion when "'it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" *Id.* (citation omitted). The district court, having taken the plea and heard defendant's testimony in support of his motion to withdraw the plea, carefully considered the seven factors identified by this court and determined that the defendant had not met his burden to establish a fair and just reason for withdrawal.

The district court found that factors one and two—concerning the amount of time that had passed and the reasons offered for such delay—did not lend support either to granting or denying the motion. Both the defendant and the government take issue with the neutral

treatment of these factors. The delay of eight months between the guilty plea on January 7 and the motion to withdraw the plea on July 24 was lengthy. This court has said that "'a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time.'" *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (citation omitted).

The district court accepted defense counsel's statement that a substantial portion of the delay was due to the substitution of counsel prior to sentencing, and acknowledged that the defendant indicated that he might seek to withdraw his plea more than a month before the motion was actually filed. Neither fact, however, addressed the three months that passed between the plea and the substitution of counsel. While such a delay has been found to weigh against withdrawal in other cases, it certainly was not an abuse of discretion for the district court to find that these factors did not weigh *in favor* of withdrawal in this case. *See Haygood*, 549 F.3d at 1053 (citing *United States v. Cinnamon*, 112 F. App'x 415, 418-19 (6th Cir. 2004) (declining to allow withdrawal where motion was filed at least 90 days after the guilty plea); *Baez*, 87 F.3d at 808 (67 days); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55 days); *but see United States v. McCoy*, 155 F. App'x 199, 203 (6th Cir. 2005) (remanding where district court relied solely on 133-day delay and there was no express waiver of constitutional rights).[2]

---

[2] The dissent acknowledges that the record does not reflect whether delay between the plea in January and the substitution of counsel in April may be attributed to a lack of communication with counsel. During that period, defendant was interviewed by probation and objections were filed to the PSR on his behalf without mention of a desire to withdraw his plea. As the government emphasizes, defendant became dissatisfied only after discovering that the PSR recommended a higher sentence than he had anticipated.

Factors three and four—whether defendant asserted or maintained his innocence and the circumstances surrounding the plea—were found by the district court to be dispositive. In seeking to withdraw his plea, defendant testified that although he had discussions with his attorney about a plea offer, he thought he was coming to court on January 7 for trial on all four counts and did not intend to plead guilty. However, the January 7th transcript does not reflect any uncertainty about it being a plea-change hearing as opposed to a trial. Although defendant asserted his innocence of all the charges at the conclusion of the hearing on the motion for withdrawal, defendant's claim was then and continues to be that he pleaded guilty to the wrong counts. On appeal, defendant emphasizes his testimony at sentencing denying that he used the AK-47 in taking the El Camino from Phillips. That denial, which was contradicted by statements from several witnesses, was not a claim of innocence.

Defendant testified at the hearing on the motion that he had wanted to fire his attorney when he came to court on January 7, although he did not say so once he was there. In fact, when asked, defendant expressed satisfaction with his attorney, said he had discussed the plea agreement with counsel, and had his questions answered by counsel. Despite defendant's later claim that he had been confused about which charges he was pleading guilty to, the terms of the plea agreement were reviewed and counts 1 and 4 were read to the defendant at the outset of the change of plea hearing. Also, in establishing the factual basis for the plea, the government outlined the proof as it related to both carjackings. Although defense counsel noted defendant's disagreement with some of the facts—unspecified things about the sequence of events—defendant nonetheless admitted that the government would

likely have been able to establish the essential elements of count 1 and count 4. The district court asked defendant whether he needed to talk privately with his attorney before entering the plea, but defendant answered "no" and pleaded guilty to count 1 and to count 4.

Defendant testified in seeking to withdraw his plea that he was "really disappointed" with the sentence recommendation in the PSR for a carjacking and a firearm that he now claimed not to have possessed. Confronted by the district court with his post-arrest admission to having used the AK-47 in stealing the cars, defendant claimed that he had been threatened and "somewhat" coerced by the police into confessing that he had the AK-47. He then also said he had been coerced by his attorney into pleading guilty, contradicting his prior testimony that he entered the plea agreement of his own free will.[3]

The district court found that the defendant's prior experience with the criminal justice system—the sixth factor—undermined defendant's claim that he had been confused about the pleas he entered in this case. Defendant acknowledged that he had as many as 18 prior guilty pleas, although he argued that they were mostly state convictions for driving-related offenses. Without disputing that this factor was relevant, defendant argues that his history and characteristics—the fifth factor—supported his claim of a fair and just reason for withdrawing his guilty plea.

---

[3]Although the dissent concludes that the district court "apparently agree[d]" that counsel may have pressured the defendant into pleading guilty, that was neither a factual finding nor is it a fair reading of the colloquy with counsel. Rather, the district court's response to counsel's expressed discomfort with the suggestion that prior counsel had coerced the plea was that counsel knew defendant's *claim* was that he had been misled. The record also reflects that the government was unwilling to agree to a plea that did not account for both victims; that, absent a plea, defendant faced a minimum consecutive 25-year term on the second firearm offense; and that the witness statements admitted into evidence at sentencing justified the defense's concession that the government would likely be able to prove both firearm offenses.

Defendant was 42 years of age and had a tenth-grade education. At the hearing on the motion to withdraw, defendant testified that he was a "slow learner," attended a special education class, and could hardly read, but could "read some." In connection with the PSR, defendant indicated an intention to complete his GED. Defendant argues on appeal that his educational level and the effects of his cocaine addiction may have caused him to have trouble understanding what he was doing. The district judge, who observed defendant testify at both hearings, found that defendant's plea was voluntary and knowing. The question for this court is not whether we would believe defendant's claim of confusion, but, rather, whether it was an abuse of discretion for the district court not to believe him.

On this record, we cannot conclude that the district court abused its discretion in finding, after balancing the relevant factors, that the defendant had not demonstrated a fair and just reason to withdraw his guilty plea to counts 1 and 4.

**AFFIRMED**.

**KAREN NELSON MOORE, Circuit Judge, dissenting.** Federal Rule of Criminal

Procedure 11 permits a defendant to withdraw a guilty plea prior to sentencing provided that

the defendant has presented a "fair and just reason" for doing so. Because I believe that

William Peppers has established such a reason, and that the district court abused its discretion

in concluding otherwise, I must dissent.

This court reviews a district court's denial of a motion to withdraw a guilty plea for

an abuse of discretion. *United States v. Dixon*, 479 F.3d 431, 436 (6th Cir. 2007). We have

held that a district court abuses its discretion in denying a defendant the right to withdraw a

guilty plea "when the district court relies on clearly erroneous findings of fact, improperly

applies the law or uses an erroneous legal standard." *United States v. Ellis*, 470 F.3d 275,

280 (6th Cir. 2006). "This Court may also find an abuse of discretion if the district court

'committed a clear error of judgment in the conclusion it reached upon a weighing of the

relevant factors.'" *Id.* (quoting *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir.

2003)). In determining whether a fair and just reason exists to permit a defendant to

withdraw a plea, and whether the district court abused its discretion, we review a number of

nonexclusive factors, the *Bashara* factors, which include:

> "(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted."

*United States v. Ward*, 356 F. App'x 806, 808–09 (6th Cir. 2009) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *abrogated on other grounds by statute as recognized in United States v. Caseslorente*, 220 F.3d 727, 734 (6th Cir. 2000)); *see also United States v. Hunt*, 205 F.3d 931, 937 (6th Cir. 2000). "Each factor's relevance 'varies according to the circumstances surrounding the original entrance of the plea as well as the motion to withdraw.'" *Ward*, 356 F. App'x at 809 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)) (alteration omitted).

Peppers pleaded guilty in a written plea agreement to one count of carjacking a Chevrolet Impala from Issac Sawyer (Count 1) and one count of using and carrying a firearm during and in relation to a carjacking of a Chevrolet El Camino from Kevin Phillips (Count 4). Subsequently, Peppers filed a motion to withdraw the plea asserting that he failed to understand the terms of the written agreement—namely, he did not comprehend at the time of his plea that it encompassed acts from both carjackings as opposed to the entirety of the conduct associated with the carjacking of the Impala. As a result, Peppers claimed that he had erroneously pleaded guilty to conduct in Count 4 that he did not commit. Because I believe that the district court relied on a clearly erroneous factual conclusion regarding Peppers's assertion of innocence when refusing to allow Peppers to withdraw his guilty plea as well as committed a clear error of judgment in weighing the totality of the factors that it properly considered, I would **REVERSE** the judgment of the district court and **REMAND** for further proceedings.

The first factor that this court generally considers in determining whether the district court abused its discretion in denying a defendant's motion to withdraw a guilty plea is the delay between the entrance of the guilty plea and the motion to withdraw and, if there is a delay, whether the defendant has asserted a valid reason. Here, as the majority notes, the delay was lengthier than many delays that we have determined weighed against the defendant. Unlike the majority, however, I believe that Peppers has articulated a valid reason for the delay. Following Peppers's guilty plea in January 2008, his attorney, Mr. Brown, left the federal-public-defenders office and was removed from Peppers's case.[1] Peppers was not appointed substitute counsel, Ms. Jermann-Robinson, until mid-April 2008, and apparently because of the demands of her caseload at the time, Jermann-Robinson had difficulties both meeting with her new client and becoming familiar with his case. In fact, following her appointment, Jermann-Robinson requested three continuances of Peppers's sentencing hearing, and at least one was premised on the fact that Jermann-Robinson had yet to meet with the incarcerated Peppers. It is unclear from the record when Jermann-Robinson finally met with Peppers, but on June 18, 2008, Jermann-Robinson requested "additional time to confer" with Peppers because Peppers had given indications that he wanted to withdraw his guilty plea. Jermann-Robinson ultimately filed Peppers's official motion to withdraw approximately one month later on July 24, 2008, stating before the district court that "any

---

[1]The record does not indicate precisely when Brown left and whether Brown was properly communicating with Peppers up until his departure. Brown apparently did file a position paper relating to the PSR on Peppers's behalf on April 3, 2008, but Peppers asserts in his pro se filings that following the negotiation of the plea agreement he had been abandoned by Brown.

delay or at least a delay since April the 15th has been on me and not on Mr. Peppers." Dist. Ct. Dkt. Doc. ("Doc.") 59 (Hr'g Mot. to Withdraw at 29).

Given both Brown's departure and Jermann-Robinson's inability to meet with Peppers and prepare for his case, I believe that Peppers has presented a valid excuse for not moving to withdraw his guilty plea earlier and has explained sufficiently the delay. The record plainly indicates that, through no fault of Peppers, there was a lack of communication and contact between Peppers and his shifting counsel, and the delay in filing the motion was directly attributable to the departure of one counsel and the substitution of another. *See United States v. McCoy*, 155 F. App'x 199, 203 (6th Cir. 2005) (unpublished opinion) (indicating a delay was justifiable when the defendant had expressed to his old counsel a desire to withdraw his guilty plea and "new counsel," with whom the defendant presumably had time to consult, "filed the motion to withdraw the plea within approximately 45 days of being appointed"); *cf. United States v. McIntyre*, No. 09-3347, 2010 WL 2545483, at *4 (6th Cir. June 11, 2010) (unpublished) (finding no excusable delay when the defendant failed to offer any evidence to support his conclusion that "he brought the motion to withdraw his plea to counsel at his first opportunity" because his "motion . . . simply state[d] that 'counsel did not have contact with [him] for several weeks" and "did *not* claim that [he] was prevented from contacting his attorney."); *United States v. Bustos*, 186 F. App'x 551, 554–55 (6th Cir. 2006) (unpublished opinion) ("[E]ven considering the substitution in appointed counsel, 54 days passed between substituted counsel's appointment to the case and the filing of the motion of withdrawal," and the defendant "fails to provide any explanation at all for this

54-day delay." (internal quotation marks omitted)). As a result, this factor weighed in favor of granting Peppers's motion to withdraw.

Two of the next factors that we consider in determining whether a district court has abused its discretion are the circumstances underlying the entry of the plea agreement and the nature and background of the defendant. To be sure, as the majority notes, there are some facts surrounding Peppers's plea that tend to weigh in favor of the Government. For example, Peppers never objected to the factual basis for the plea as it was presented in the indictment and in open court, and he answered in the negative when the district court asked whether Peppers had any questions concerning the plea agreement. Despite these facts, however, in its analysis, the district court ignored a wealth of evidence that Peppers simply did not understand that he was pleading guilty to charges stemming from the two separate carjackings and that he did not intend to do so.

First, there is evidence that Peppers may have been pressured by Brown into pleading guilty in light of Brown's scheduled departure from the federal-public-defenders' office. From the initial indictment onward, Peppers had maintained continually his desire to go to trial, and he apparently agreed to plead guilty only a few days before the trial was set to commence.[2] The Government even acknowledged that it had engaged in "lengthy

---

[2]In fact, there is record evidence indicating that Peppers was unaware of the purpose of the change of plea hearing prior to its commencement and that he believed when he arrived at the courthouse that he was there for trial. The district court never made a finding as to whether Peppers agreed to plead guilty before arriving in court, however, because Peppers conceded that at some point during the proceeding he became aware that it was a plea hearing. When the district court asked Peppers why he continued to plead guilty if he had intended to go to trial, Peppers responded:

> I [thought that] I was going to court, but also I wanted to fire Pat Brown, too. And
> as I stepped in this courtroom, and I seen you, it looked like to me you was like

negotiation" with Brown on Peppers's behalf and further conceded that it knew that it was "Mr. Peppers'[s] position that he wanted to plead just to one event, not two." Doc. 59 (Mot. Withdraw Hr'g at 32–33). Peppers testified that prior to the hearing Brown had told him that it was in Peppers's "best interest to say yes, yes, yes to everything that [the district court] asked," *id.* at 10–11, and that he felt rushed by Brown to resolve the case and believed that Brown "did all that he could do to get [him] to sign [a] plea so that [Brown could] go ahead and move on out of town" without having to deal with Peppers further, *id.* at 22.

Given the facts in the instant case, it is both curious and concerning that after expressing a very clear desire to plead to solely one criminal episode throughout protracted negotiations with the Government, Peppers would have decided suddenly, on the eve of trial, to plead guilty to the two unrelated counts. And despite denying the motion to withdraw, the district court apparently agreed that Brown may have pressured Peppers into pleading guilty. Following testimony concerning Brown's allegedly coercive behavior, Jermann-Robinson stated to the district court that she was "uncomfortable" with the tone that the hearing was taking with regard to Brown's representation. *Id.* at 25. The district court responded without sympathy, noting that Jermann-Robinson "knew coming in [to court] that [Peppers's] attorney misled him." *Id.* at 26.

Second, in addition to evidence that Peppers fought the prospect of pleading guilty to two unrelated counts and may have pleaded only upon pressure from Brown, the

---

sitting up there like a god and angel . . . my mouth would not open at all, it would not come out of my mouth to say I wanted to fire Pat Brown.
Doc. 59 (Mot. Withdraw Hr'g at 17–18).

circumstances under which Peppers pleaded guilty cannot be divorced from Peppers's nature and background. According to Peppers's testimony, he is "a slower learner" and "attended a special education class." *Id.* at 20. Moreover, Peppers testified that he "never read the piece of paper" (i.e., the plea agreement) that Brown gave him to sign, *id.* at 11, because he "can't hardly read," *id.* at 20, and that despite asking Brown to read the document to him, Brown "never . . . read [him] anything," *id.* I am extremely troubled by the fact that neither counsel nor the district court thought to inquire as to whether Peppers's alleged disability or reading difficulties may have influenced his understanding of the plea hearing, particularly in light of Peppers clear assertion it was "not that [he] didn't pay attention" at the plea hearing; instead, he just "didn't understand what was going on." *Id.*

Thus, notwithstanding my agreement with the majority that the district court's and Government's statements at the plea hearing contained facts sufficient to put Peppers on notice that he was pleading guilty to two unrelated counts, if Peppers's assertions regarding his limited comprehension skills are true—and there is no finding otherwise—then it is likely that he simply did not understand that his preference to plead to a singular episode had not prevailed during the plea negotiations, and, even assuming that he did understand what was happening given his lack of education, Peppers could have been intimidated by the formal setting such that he would not have objected. Lamentably, the district court never discussed the role that Peppers's "nature and background" played it its analysis of the *Bashara* factors

and its decision to deny his motion,[3] and given this particular factor's clear relevance as to the question of whether Peppers understood the plea, I believe that the district court abused its discretion in failing to inquire further and in ultimately deciding that the circumstances surrounding the entry of the plea warranted the refusal of Peppers's request to withdraw. In sum, when the facts surrounding the plea agreement that favor the Government are viewed in light of Peppers's background, I believe that these factors ultimately tip in Peppers's favor on the instant record. At the very least, given the district court's failure to address this factor, a remand for further factual findings as to Peppers's literacy and learning disability is warranted.

An additional factor that we consider in our analysis is whether the defendant has asserted or maintained his or her innocence of the charges to which he or she pleaded guilty. In the instant case, the district court concluded that Peppers first asserted his innocence at the end of the hearing on his motion to withdraw and that such an assertion was inconsistent with Peppers's previous statement that he was willing to plead guilty to the entirety of the criminal episode involving the Impala. The district court's conclusion, however, is clearly erroneous. Apart from failing to object to the description of the charges, the record indicates that Peppers did, in fact, maintain from the inception of the criminal proceedings that he was

_____

[3]To the extent that Peppers's background can be grouped with the factor focusing on his experience in the criminal-justice system, the district court did determine that Peppers's experience undermined his claim that he was confused at the hearing. Certainly, Peppers does have a lengthy criminal history, and he has pleaded guilty on previous occasions. But as Peppers notes in his brief, many of the crimes to which he pleaded guilty were fairly simple criminal charges—the majority of which related in some manner to driving infractions.

innocent of the conduct contained in Count 4, which was the impetus behind his desire to withdraw his guilty plea.

In concluding that Peppers was inconsistent with regard to his innocence, the district court relied on the following exchange at the hearing to withdraw his plea:

> [The court:]  Is it your statement to the court that you are not guilty of the matters contained in the indictment which charges you with *two* carjackings and *two* 924(c) use of a firearm in connection with a crime of violence . . .?
>
> [Peppers:]  Yes, ma'am.

*Id.* at 27 (emphasis added).  A plain reading of the district court's question and Peppers's answer, however, does not indicate that Peppers's response was in any way incompatible with his assertion that he engaged in the conduct alleged in Counts 1 and 2 (and was willing to plead guilty to those), but was not guilty of Count 4.  Peppers agreed that he was "not guilty of . . . *two* carjackings and *two* 924(c)," but that does not mean that Peppers was asserting that he did not engage in *any* of the conduct and would refuse to admit that he was guilty of *one* car jacking and *one* gun charge, as he had maintained during both pre-trial negotiations and at the hearing on the motion to withdraw his guilty plea.

Furthermore, although the Government relies on Peppers's interview with the U.S. Probation office, as relayed in the Presentence Investigation Report ("PSR"), to support its claim that Peppers has not maintained consistently his innocence as to Count 4, the Government's assertions are also overstated.  First, contrary to the Government's characterization of the PSR, the PSR does not convey that Peppers confessed to the probation office that he threatened the driver of the El Camino with a gun, as charged in Count 4.  The

PSR instead states that "Peppers stated that as he approached Kevin Phillips' vehicle [the El Camino], Phillips abandoned the vehicle, leaving the keys in it." PSR ¶ 10. Peppers's admission to the probation office regarding the theft of the El Camino clearly did not mention any weapon. Second, the Government highlights the fact that Peppers told the probation office that "the victim was a good friend" and that Peppers was "deeply sorry" for what he did, *id.* ¶ 14, and it argues that this statement requires the conclusion that Peppers was admitting guilt as to all of the charges. But the PSR identifies the "victim in this case" as "Issac Sawyer," and Sawyer "was the owner and operator of the . . . Impala," which Peppers never denied stealing. *Id.* ¶ 12. The statement that Peppers was sorry for harming his friend in the Impala does not therefore undermine Peppers's assertion that he was not guilty of the conduct in Count 4, involving the El Camino. Looking at the totality of the evidence in the record, I believe that Peppers has maintained his innocence as to Count 4, and it is because Peppers claims that he is not guilty of this count that he desires to withdraw his plea. The district court's conclusion that Peppers advanced inconsistent positions at the plea hearing is therefore clearly erroneous, and this factor weighs in favoring allowing Peppers to withdraw his plea.

In short, there are two bases for vacating the judgment of the district court. First, Peppers had maintained consistently his innocence as to Count 4, and the district court's conclusion otherwise is not supported by the record. Because we have held that a district court abuses its discretion in denying a motion to withdraw based on a "clearly erroneous finding[] of fact," *Ellis*, 470 F.3d at 280, I would remand to the district court for further

proceedings on this ground. Second, in addition to relying on a clearly erroneous fact, I believe that the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.* (internal quotation marks omitted). As outlined above, any delay in moving for withdrawal was attributable to counsels' conduct. To be sure, there were some facts surrounding the entry of the plea that weighed in favor of the Government, but those facts were counterbalanced by troubling evidence regarding potential pressure from Brown for Peppers to plead guilty as well as Peppers's inability to understand what was occurring because of a disability and an inability to read. The district court abused its discretion by failing even to acknowledge, let alone discuss, the several troublesome facts related to Peppers's background and nature that clearly raised red flags, and, as a result, committed a clear error in weighing the factors that it did consider. For all of the reasons outlined above, I believe that Peppers has met his burden to put forth a fair and just reason for allowing him to withdraw his guilty plea, and the district court abused its discretion in concluding otherwise.

Because I would hold that Peppers has established a fair and just reason to withdraw his guilty plea in light of the *Bashara* factors, the final matter that I must consider is whether the Government would be prejudiced by allowing Peppers to withdraw his guilty plea. *See Ellis*, 470 F.3d at 285–86 (indicating that the Government is not required to establish prejudice "unless and until the defendant advances and establishes a fair and just reason" for withdrawal (internal quotation marks omitted)); *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) ("The prejudice to the government need not be established or considered

unless and until the defendant has established a fair and just reason for vacating his plea."). Here, the Government argues that it would be prejudiced in two ways. First, it claims that witnesses' memories will have dimmed, thereby reducing the strength of its case against Peppers, and second, it would be required to spend time and resources preparing for trial. The Government's assertions are without merit.

"Generally, prejudice to the government has been found in cases where the entering of a guilty plea and then a subsequent motion to withdraw has made the government's case more difficult than it would have been if the guilty plea had never been entered." *United States v. Lineback*, 330 F.3d 441, 445 (6th Cir. 2003) (Gilman, J., concurring). In the instant case, the Government has not alleged that physical evidence has been discarded, *id.* (citing *United States v. Jerry*, 487 F.2d 600 (3d Cir. 1973)), or that its witnesses have died, *id.* (citing *United States v. Vasquez-Velasco*, 471 F.2d 294 (9th Cir. 1973)). Rather, the Government has claimed simply that the witnesses' memories will be less fresh and has asserted without any supporting evidence that they will be unable to remember the important events. It is certainly true that memories fade with time, but I do not believe that the delay has been so long that the relevant witnesses would unable to remember the salient details of these traumatic crimes such that their dimmed memories can be equated to the loss of evidence. *See, e.g.*, *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) ("There . . . was no finding in the record that key witnesses were no longer available or that the few months' delay had hindered their ability to remember key events."). As to the Government's second claim, as Peppers notes, he pleaded guilty on the eve of trial, which means that "[t]he

government had already completed the discovery process, lined up witnesses[,] and was presumably prepared to go to trial." Appellant Br. at 21. The Government cannot make a showing of prejudice by stating simply that going to trial will require a further expenditure of time and resources. If that were sufficient to establish prejudice, then no defendant would ever be able to overcome the prejudice hurdle. *See Valdez*, 362 F.3d at 913 ("The government always has to spend time and money trying a case, so this 'prejudice' is irrelevant on these facts."). Because I believe that allowing Peppers to withdraw his plea would not cause prejudice to the Government, this factor does not overcome my belief that Peppers put forth a fair and just reason to withdraw his guilty plea and that the district court abused its discretion in denying Peppers's motion.

In conclusion, for the reasons outlined above, I believe that Peppers has set forth a fair and just reason to withdraw his guilty plea and that the district court abused its discretion in determining otherwise. I would **REVERSE** the judgment of the district court.