NOT RECOMMENDED FOR PUBLICATION
File Name: 11a0373n.06

No. 08-1658

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jun 02, 2011*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,              )
                                       )
    Plaintiff-Appellee,                )    ON APPEAL FROM THE UNITED
                                       )    STATES DISTRICT COURT FOR THE
v.                                     )    EASTERN DISTRICT OF MICHIGAN
                                       )
MILTON B. JONES,                       )    OPINION
                                       )
    Defendant-Appellant.               )
                                       )

**Before:  COLE, CLAY, and GILMAN, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.**   Milton B. Jones challenges several aspects of

his 360-month sentence and his guilty plea for engaging in a continuing criminal enterprise.  Jones

was originally charged with several other counts arising out of his criminal activities but, pursuant

to the terms of his plea agreement, the government dismissed the remaining charges.  For the reasons

set forth below, we **DISMISS** Jones's appeal due to the appellate-waiver provision in the plea

agreement.

## I.  BACKGROUND

Jones and Raymond Canty, along with a number of other coconspirators, were indicted in

June 2001 on several charges arising out of an organized drug ring—known as the "Dog

Pound"—that operated in the Detroit area from approximately 1995 until 2001.  In addition to selling

drugs, members of the organization also robbed rival drug dealers and murdered several individuals

in the course of their criminal activities.  The government initially sought the death penalty against

Jones for the murder of Mark Grice and Antoine Carruthers and against Canty for the murder of Misha Dorsey. But both Jones and Canty reached plea agreements under Rule 11 of the Federal Rules of Criminal Procedure that excluded the murder counts, as well as several other charges. Jones subsequently pled guilty to the continuing-criminal-enterprise charge, a crime in violation of 21 U.S.C. § 848. Canty pled guilty to conspiracy to distribute cocaine, a crime in violation of 21 U.S.C. § 846, and to conspiracy to launder money, a crime in violation of 18 U.S.C. § 1956(h).

Both defendants acknowledged that the applicable U.S. Sentencing Guidelines called for each of them to receive a life sentence. They agreed, however, to cooperate with the government and, in exchange, the government promised that if either defendant were to provide substantial assistance by implicating others, then the government would recommend a lower sentence for that defendant. In the event that the government were to move for a downward departure based on substantial assistance, the defendants also reserved the right to argue for a sentence lower than the government's recommendation. Finally, as part of their respective plea agreements, the defendants waived most of their appellate rights.

**A.      Jones's plea agreement**

In January 2006, Jones pled guilty to the second count of the second superseding indictment, which charged him with engaging in a continuing criminal enterprise involving narcotics, in violation of 21 U.S.C. § 848. The parties agreed to the following offense elements that the government would need to prove at trial: (1) that from approximately 1995 to June 2001, on at least three or more occasions, Jones knowingly committed, as part of a continuing series of related violations, felony violations of federal narcotics laws under 21 U.S.C. § 841(a) and § 846; (2) that

Jones's continuing series of federal narcotics violations was undertaken in association and in concert with five or more other people, regarding whom Jones was an organizer and occupied a management and supervisory position; (3) that Jones obtained substantial income and resources from the continuing series of violations; and (4) that a portion of the continuing violations occurred in Detroit and involved the distribution of at least five kilograms of a substance containing a detectable amount of cocaine. At Jones's plea hearing, his counsel agreed that these are the elements of the offense that the government would have to prove at trial, with the qualification that, as is required under 21 U.S.C. § 848, Jones was taking responsibility for actions by his coconspirators that were reasonably foreseeable to him even if Jones did not personally engage in all of those actions.

Jones stipulated in his plea agreement to the following facts in support of these offense elements: (1) he agreed with the coconspirators to distribute cocaine, marijuana, and heroin; (2) this distribution involved over five kilograms of cocaine; (3) he directed the activities of at least five other participants in the distribution of these drugs; (4) he controlled and directed the distribution and storage of cocaine and marijuana from several private residences in Detroit that the coconspirators referred to as the "Dog Pound"; (5) he "and at least [five] other participants used the locations to plan the robberies, kidnaping and intentional killings of rival drug traffickers and their associates," including the murders of two specific individuals; and (6) "that he obtained substantial income and resources from this continuing series of narcotics and narcotics-related violations." Jones also admitted most of these facts at his plea hearing, with a few qualifications that do not affect his satisfying the elements of his offense.

The plea agreement stipulates that Jones's adjusted Guidelines adjusted offense level is 47, with a criminal-history category of V, which calls for a life sentence. This calculation is consistent with the government's statement at Jones's plea hearing, to which Jones did not object, that the parties agreed to a Guidelines calculation that calls for life imprisonment. The parties also agreed that the statutory sentencing range for the charged offense is a mandatory minimum of 20 years in prison, with a maximum of life imprisonment.

Both Jones's plea agreement and the statements made at his plea hearing describe his waiver of appellate rights. His plea agreement contains the following paragraph titled "Waiver of appeal rights":

> If the Court imposes a sentence that does not exceed the top of the range described in ¶ 2 of this agreement [i.e., a life sentence], defendant waives any right he may have to appeal his conviction or sentence. If the Court imposes a sentence that is not below the bottom of the range specified in ¶ 2, the U.S. Attorney waives any right he may have to appeal the sentence.

In addition, the agreement provides as follows in a section titled "Adjusted Sentence Recommendation":

> The parties agree that if the U.S. attorney determines that defendant has provided substantial assistance in the investigation and prosecution of others, the U.S. Attorney will recommend that defendant be sentenced to a term of 360 months . . . .

> In the event the court sentences the defendant to a period of confinement in excess of 360 months, the defendant will be afforded the opportunity to appeal such decision. Concomitantly, in the event the court imposes a sentence less than 360 months, the government will be afforded the opportunity to appeal such decision.

The parties also discussed Jones's waiver of his appellate rights at his plea hearing. First, the government pointed out that the plea agreement contains a "significant waiver . . . of appeal

rights." Jones's attorney then clarified that "there might appear to be some conflict . . . or inconsistency between the two references to appeal rights, but clearly, it's my understanding that this agreement provides Mr. Jones the right to appeal any sentence that is in excess of 360 months." The government responded by noting that this appellate right existed only if the government filed a motion under U.S.S.G. § 5K1.1 for a downward departure based on Jones's substantial assistance. Jones's attorney then asked Jones if he wished to ask a question, but Jones responded, "No, that's okay. That's fine," and Jones's attorney stated, "I think we've resolved that."

Jones and his attorneys signed the last page of his plea agreement under a statement providing that "[b]y signing this document, the defendant acknowledges that he has read (or been read) this entire documents, understands it and agrees to its terms; and also acknowledges that he is satisfied with his attorney's advice and representation." Several questions and answers at Jones's plea hearing also reflected that Jones understood the nature of his guilty plea and the rights he was forfeiting by entering into the agreement. The district court accepted Jones's plea as being made knowingly and voluntarily.

The Probation Office's Presentence Report (PSR) calculated a Sentencing Guidelines offense level of 49 (as opposed to the offense level 47 in the plea agreement), but this difference is inconsequential because offense level 43 is the maximum level under the Guidelines. Jones objected to a number of factual determinations that were made in the PSR, as well as to the PSR's Guidelines calculation. These objections included Jones's claim that the Guidelines did not allow for murder to be considered under the continuing-criminal-enterprise charge that he agreed to in his plea agreement and that there was no factual basis to find him responsible for the Grice and Carruthers

murders or, at the very least, for first-degree murder. The court held a hearing and denied Jones's numerous objections. As promised, the government later filed a motion for a downward departure to a sentence of 360 months' imprisonment based on Jones's substantial assistance.

At Jones's sentencing hearing in May 2008, the parties and the court reaffirmed his guilty plea. Jones argued for a sentence lower than 360 months based in part on the claims that he had already raised in his objections to the PSR. The court ultimately accepted the government's sentencing recommendation as well as the facts and Guidelines calculation in the PSR. Based on these findings, the court sentenced Jones to 360 months in prison on the continuing-criminal-enterprise charge, as well as to five years of supervised release.

**B.     Canty's plea agreement**

Canty's plea agreement contained the same waiver of appellate rights as did Jones's agreement, except that the government agreed to recommend a sentence of 240 months in prison instead of the 360 months that it recommended for Jones. Like Jones, Canty objected to various elements of his PSR and also sought a lower sentence based on various other grounds. The district court rejected Canty's arguments and, in January 2008, imposed the government's recommended sentence of 240 months in prison.

**C.     Procedural history**

Both Jones and Canty filed timely appeals of their sentences. In January 2009, these separate appeals were consolidated for purposes of briefing and submission. The government filed a motion to dismiss the appeals in June 2009 on the basis that the defendants had waived their appellate rights. Both cases were initially assigned to the same panel of this court, to be heard in April 2011, but were

separated in February 2011 when Jones's motion to reschedule the date of his oral argument was granted. This court dismissed Canty's appeal on April 15, 2011 based on Canty's waiver of appellate rights in his plea agreement. *United States v. Canty*, No. 08-1258, 2011 WL 1441909 (6th Cir. Apr. 15, 2011) (unpublished opinion).

**D.      Canty's appeal**

On appeal, Canty raised several objections to his sentence based on the alleged lack of procedural and substantive reasonableness. But, as this court highlighted, "[n]otably, Canty does not claim that his guilty plea is invalid, let alone that the appeal waiver is invalid or limited." *Id.* at *4. "In short, both sides received the benefit of their bargain." *Id.* at *5. In exchange for Canty's guilty plea and substantial assistance, the government agreed to dismiss Canty's remaining charges, to refrain from pressing for the death penalty, and to recommend a sentence of 240 months' imprisonment instead of 360 months. The court therefore dismissed Canty's appeal because he had waived his right to appeal.

## II. JURISDICTION

Even where a defendant has waived the right to appeal, this court still retains jurisdiction to hear the defendant's challenge to the judgment of the district court. *Id.* (dismissing Canty's appeal rather than declining jurisdiction, based on *United States v. Caruthers*, 458 F.3d 459, 472 n.6 (6th Cir. 2006) (noting that although "we have said that a valid appellate waiver leaves this court without jurisdiction to hear a sentencing appeal," we have also "affirmed sentences challenged by defendants who had validly waived their appeals. . . . [This] suggest[s] that an appellate waiver does *not* divest this court of jurisdiction" (emphasis in original))).

## III.  ANALYSIS

Jones, like Canty, raises a number of procedural- and substantive-reasonableness objections to his sentence.  He argues that the district court's failure to explain why it rejected his objections to the PSR's Guidelines calculation was procedurally unreasonable.  Jones's specific objections to the Guidelines calculation include challenges to the district court's (1) adopting a base offense level of 43 based on the homicides that were part of his continuing criminal enterprise; (2) rejecting a decrease to Jones's offense level under § 3E1.1 based on his acceptance of responsibility; (3) rejecting Jones's objection to the PSR's two-level upward adjustment pursuant to § 3A1.3 for the restraint of a victim; (4) refusing to reduce Jones's criminal-history score; and (5) rejecting Jones's motion for a downward departure or variance, and the court's accepting the government's recommended sentence, all without any reasoning.

Two additional challenges are presented by Jones that he raises for the first time on appeal. These are (1) that the district court did not ensure that Jones understood the nature of the charge to which he pled guilty, and (2) that the court did not have a sufficient factual basis for accepting his guilty plea.  He asks us to vacate his guilty plea and remand the case for a new plea hearing.

### A.      Validity of Jones's plea agreement

As Jones's attorney acknowledges, the two additional challenges to the validity of Jones's plea agreement were not raised below and are therefore reviewed under the plain-error standard. *See United States v. Mobley*, 618 F.3d 539, 544 (6th Cir. 2010).  The first such claim is that the district court violated Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure by failing to ensure that Jones understood the nature of the charge to which he pled guilty.

"A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant. Rule 11 is meant to ensure that the district court is satisfied that the defendant's plea is knowing, voluntary, and intelligent." *United State v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005) (citation omitted). This rule requires, among other things, that before a court accepts a defendant's guilty plea, "the court must inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G).

"Because a guilty plea involves the admission of all the elements of a formal criminal charge, the accused must have knowledge of all those elements." *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004) (citations and internal quotation marks omitted). "At a minimum, the defendant must understand the critical or essential elements of the offense to which he or she pleads guilty." *Id.* at 909 (internal quotation marks omitted).

Jones contends that the district court did not ensure that he understood the way in which the charge against him was based on the murders of Grice and Carruthers. He also argues, pursuant to Rule 11(b)(3), that there is no factual basis in the record to support his offense being based on these murders. *See* Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). Jones specifically argues that his offense level was erroneously based on first-degree rather than second-degree murder. He further claims that "there was insufficient evidence connecting him to any of the two homicides — that were not committed in furtherance of [the continuing criminal enterprise]." These arguments are all connected because "Rule 11(b)(1)(G)'s requirement that a defendant understand the essential

elements of the crime is integrally related to Rule 11(b)(3)'s requirement that the district court determine that the plea has a factual basis." *See Valdez*, 362 F.3d at 909.

But Jones's challenge to the validity of his plea agreement based on the murders is without merit because the murders were not part of the ultimate charge against him. Under the plea agreement, the government dropped the homicide charges against Jones. He instead pled guilty to engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, which carries a statutory maximum penalty of life imprisonment. And Jones's attorney agreed at the plea hearing that life imprisonment was the statutory-maximum sentence for Jones's continuing-criminal-enterprise offense.

Jones's continuing-criminal-enterprise charge includes his violation of 21 U.S.C. § 841, based on the Dog Pound's distribution of narcotics, as an element of his offense. Murder can, under some circumstances, be an element of a continuing-criminal-enterprise violation under § 848 or of a narcotics violation under § 841, but the statutes also allow for sentences of life imprisonment even where murder is not an element of the offense. The parties in the present case agreed, both in the plea agreement and at the plea hearing, that Jones's continuing-criminal-enterprise charge is based on the Dog Pound's distribution of drugs in violation of 21 U.S.C. § 841(a) and § 846. This charge specifically excludes the element of murder. Although the murders were relevant to Jones's Guidelines calculation, they are not an element of his continuing-criminal-enterprise charge. The court thus properly asked Jones at his plea hearing: "[D]o you understand that with regard to this [Guidelines] calculation, I must have the probation department's presentence report before finally

determining how those guidelines [calculations] might come out" in the present case, to which Jones responded: "Yes, sir."

Moreover, Jones admitted at his plea hearing that he reasonably foresaw that his coconspirators' activities could lead to the homicides. The statement of facts in Jones's plea agreement, which was referenced at his plea hearing, goes even further, acknowledging that he "and at least 5 other participants . . . plan[ned] the robberies, kidnaping and intentional killings of rival drug traffickers and their associates," including the murders of Grice and Carruthers. These murders also factored into the Guidelines calculation that Jones agreed to in his plea agreement.

In addition, Jones claims that he did not admit and that the government and the district court did not establish that he acted "in concert" with five or more other people or that he was an organizer, manager, or supervisor of these other people, in violation of 21 U.S.C. § 848(c)(2)(A). But Jones admitted at his plea hearing that he "direct[ed] the activities of at least five other individuals from 1995 through 1998 with regard to these various drug-related activities." He then proceeded to answer affirmatively a series of questions regarding the activities of people that he worked with in the Dog Pound. Jones also admitted in his plea agreement that he "directed the activities of at least 5 other participants in the distribution of cocaine, heroin and marijuana" and that he agreed with nine of the coconspirators to distribute these drugs.

These challenges to the knowing, voluntary, and intelligent nature of Jones's plea agreement are unfounded and certainly do not survive plain-error review. Moreover, on this record, Jones's acknowledgments in his plea agreement and at his plea hearing that he understood the various terms

of his plea bargain leave no room for doubt that his agreement was knowing, voluntary, and intelligent.

**B.      Jones's waiver of his appellate rights**

Jones's remaining challenges concern the procedural and substantive reasonableness of his sentence.  But, just as this court previously decided with regard to Canty, Jones agreed to a substantial waiver of his appellate rights.  Jones argues that he did not waive the right to bring these challenges to the reasonableness of his sentence.  Whether a defendant's plea agreement has waived the right to appeal his or her sentence is reviewed de novo.  *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005).

In his plea agreement, Jones acknowledged that "[i]f the Court imposes a sentence that does not exceed the top of the range described in ¶ 2 of this agreement [i.e., a life sentence], defendant waives any right he may have to appeal his conviction or sentence."   Jones carved out from this broad waiver the limited right to appeal if the government were to move for a downward departure and the court proceeded to sentence him to over 360 months' imprisonment.  But because Jones was sentenced to exactly 360 months' imprisonment, this appellate right was never triggered.

According to Jones, the blanket waiver provision regarding "any right he may have to appeal his conviction or sentence" does not apply if the government filed a motion for a downward departure based on his substantial assistance.  But nothing in the plea agreement limits this broadly applicable waiver in the way that Jones suggests.  Although the agreement's provision for the right to appeal sentences above 360 months (if the government moved for a downward departure) does not explicitly state that this right is reserved from Jones's general waiver of his other appellate rights,

this is the only reasonable reading of the two separate appellate-waiver provisions in Jones's plea agreement.

Jones bargained for the government to drop the remaining charges against him, to refrain from seeking the death penalty, and to recommend a sentence of 360 months in prison instead of life if he provided substantial assistance. In exchange, Jones agreed to waive "any right he may have to appeal," except for the limited right to appeal sentences above his bargained-for 360 months. Jones has provided no reason why we should read the limitation that he suggests into his broad waiver of appellate rights.

As this court noted in Canty's appeal, "[p]lea agreements are contractual in nature, so we use traditional contract law principles in interpreting and enforcing them." *Canty*, 2011 WL 1441909, at *5 (quoting *United States v. Harris*, 473 F.3d 222, 225 (6th Cir. 2006)). The only reasonable interpretation of Jones's waiver of appellate rights is that even if the government moved for a downward departure based on his substantial assistance, Jones had waived his right to appeal so long as his sentence did not exceed the recommended 360 months. Moreover, at Jones's plea hearing, the parties agreed that Jones's ability to appeal sentences above 360 months constituted the only exception to Jones's broad waiver. This necessarily implies that he had no such right if the sentence imposed was 360 months or less. The appellate-waiver provision therefore unambiguously applies to the type of procedural- and substantive- reasonableness claims that Jones now attempts to raise on appeal.

In addition, Jones claims that his reservation of appellate rights for sentences above life imprisonment was "an impossibility and illusory." But this provision, when read in context, makes

eminent sense. First, because Jones bargained for the government to refrain from seeking the death penalty, his waiver of appellate rights even if the government sought a life sentence was not illusory. And because Jones reserved the additional right to appeal sentences above 360 months if the government moved for a downward departure, he received even more from his plea bargain than just the government's guarantee that he would not face the death penalty.

Jones attempts to counter these points by noting his agreed-upon ability to seek a sentence even lower than 360 months. But, as this court explained regarding the same aspect of Canty's plea agreement, "[t]he fact that [Jones] had a right to argue for imposition of a lower sentence before the district court does not equate to a right to appeal the district court's refusal to impose a lower sentence unless explicitly exempted from the appellate waiver provision." *Id.* at *6 n.4.

Finally, Jones claims that he did not waive the ability to appeal any miscarriages of justice that took place at his sentencing, such as the allegedly erroneous Guidelines calculations or the district court's lack of reasoning. Although Jones is correct regarding the well-settled principle "in the federal courts that a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court," his procedural- and substantive-reasonableness challenges do not rise to the level that this principle contemplates. *See United States v. Caruthers*, 458 F.3d 459, 471 (6th Cir. 2006) (internal quotation marks omitted) (holding that defendants cannot waive the right to appeal sentences above the statutory maximum). The force of Jones's challenges are particularly weak because he agreed to the 360-month sentence that he received, a sentence clearly less than the statutory maximum of life imprisonment.

A defendant may waive even constitutional rights, provided that the waiver is knowing and voluntary. *Canty*, 2011 WL 1441909, at \*4. As this court explained regarding Canty's very same waiver of appellate rights, "this court has 'repeatedly enforced plea agreements waiving specific appellate rights under similar circumstances.'" *Id.* at \*5 (quoting *United States v. Coker*, 514 F.3d 562, 573-74 (6th Cir. 2008)). We therefore adopt the same conclusion reached in Canty's case that "the plain language of the written agreement here precludes [Jones] from raising the arguments he now presents on appeal." *Id.*

## IV. CONCLUSION

For all of the reasons set forth above, we **DISMISS** Jones's appeal due to the appellate-waiver provision in his plea agreement.