NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0377n.06

Case No. 22-1722

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 15, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MILTON B. JONES, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: MOORE, ROGERS, and GRIFFIN, Circuit Judges.

ROGERS, J., delivered the opinion of the court in which GRIFFIN, J., joined. MOORE, J. (pp. 10–14), delivered a separate dissenting opinion.

ROGERS, Circuit Judge. Milton Jones led a gang that trafficked drugs and murdered rivals, leading to federal drug and murder charges. The government initially sought the death penalty. But in exchange for his cooperation, it permitted him to plead guilty to running a continuing criminal enterprise. The district court imposed a 30-year sentence. Jones later moved for compassionate release on the basis of COVID-19 and other health issues. After weighing the 18 U.S.C. § 3553(a) factors, the court found that the severity of Jones's offense conduct warranted denial of compassionate release, and Jones appeals. However, the district court did not abuse its discretion in denying compassionate relief. In particular, the district court did not rule that victim deaths categorically preclude compassionate release, nor did the court fail to consider the § 3553(a)

factors or explain adequately its balancing of the relevant considerations. Accordingly, there was neither procedural nor substantive error.

From 1995 to 2001, Milton Jones led a criminal enterprise that distributed heroin, marijuana, and cocaine in Detroit, Michigan. In that role, Jones presided over the "Dog Pound," a collection of buildings that the gang used to sell drugs and plan robberies, kidnappings, and murders—including the murders of rival drug dealers Mark Grice and Antoine Caruthers.

In 2001, a grand jury charged Jones with murder in furtherance of a continuing criminal enterprise (among other charges). 21 U.S.C. § 848(e)(1)(A) (2001). The government notified him of its intent to seek the death penalty. Jones eventually agreed to cooperate and pleaded guilty to running a continuing criminal enterprise. *Id.* § 848(a)-(c) (2001). In the plea agreement, Jones acknowledged that he and other members of the enterprise used the Dog Pound to plan the murders of Grice and Caruthers. As a result, Jones stipulated to a Guidelines range of life imprisonment based on an enhancement for killing a victim "under circumstances constituting murder." U.S.S.G. § 2D1.1(d)(1).

Jones challenged the presentence investigation report's findings that he directly ordered the murders of Grice and Caruthers, but the court overruled Jones's objections to the report. The court imposed a 30-year sentence, a downward departure from the Guidelines range of life imprisonment.

More than a decade later, Jones sought compassionate release based on his chronic health conditions and the risk to him of serious illness from COVID-19. 18 U.S.C. § 3582(c)(1)(A)(i). He also argued that the 18 U.S.C. § 3553(a) factors favored release, based on his age (65 at that time), time in custody (19 years at that time), his having served 75% of his sentence, his limited mobility, and his unlikelihood of recidivism. He also planned to undergo a kidney transplant as

2

an alternative to his 11-year long program of thrice-weekly dialysis. He submitted a doctor's declaration that although he had already been hospitalized for COVID-19, he remained at risk of reinfection as a result of his diabetes and other conditions.

The district court denied his request. After Jones had filed his motion, he tested positive for COVID-19 and subsequently recovered. While the court acknowledged Jones's "multiple health conditions," it held that the speculative risk of reinfection alone could not establish an extraordinary and compelling reason for compassionate release.

On appeal, we vacated and remanded. Jones provided sufficient evidence to establish that the general risk of reinfection was not merely "speculative," and Jones himself faced a high risk of severe infection of COVID-19. *See United States v. Jones*, No. 21-1232, 2021 WL 5918305, at *2–3 (6th Cir. Sept. 23, 2021). Considering this increased risk, and Jones's serious medical conditions, we held that the district court abused its discretion by relying solely on a previous infection to deny compassionate release. *See id.* at *3.

On remand, the district court again denied compassionate release, but this time on the basis that the § 3553(a) factors did not warrant a sentence reduction. The court explained in some detail its application of the § 3553(a) factors. The court began by going through Jones's "lengthy" criminal history, including previous convictions for manslaughter, continuing criminal enterprise, conspiracy to distribute heroin, and accessory after the fact to murder. From there, the court described Jones's offense conduct, including the murders of Grice and Caruthers.

Some factors, the court found, weighed in Jones's favor. Jones's medical evidence indicated he suffered from "serious medical conditions." Those medical conditions, along with his age (66 at the time), had resulted in "severe physical limitations" that reduced his danger to the public and "risk of recidivism." Jones's "rehabilitat[ive] efforts" in prison also cut in his favor.

3

Other considerations, the court found, did not weigh strongly in either direction. Jones's continued relationship with his family could be viewed favorably. But his history of using his "wife, son, and daughter . . . to move drugs and drug proceeds" suggested that his family support did "not necessarily provide assurance that he will stay on the right path if released."

Ultimately, the court deemed that among these factors, the seriousness of Jones's conduct weighed the most. Jones's involvement in two "heinous" murders, the court explained, "showcase[d] an extraordinary lack of respect for the sanctity of human life." In addition, Jones's distribution of large quantities of cocaine presented a "grave danger to the community's health and wellbeing." All considered, the "severity of Jones's offense" and the need to "promote respect for the law" "outweigh[ed] [the] other § 3553(a) factors" and precluded "releasing Jones."

Jones sought reconsideration, arguing that the court made multiple factual and legal errors in its analysis of the § 3553(a) factors. His motion included the contentions that he now makes on appeal, one of which was that the district court had adopted a per se rule to deny compassionate release when the crime involves murder. The district court denied reconsideration in a 6-page order rejecting each of these arguments.

Jones appeals, arguing that the district court abused its discretion (1) by failing to consider his serious health conditions, (2) by giving preemptive weight to Jones's offense conduct to the exclusion of all other § 3553(a) factors, (3) by relying on unreliable evidence in the presentence report, and (4) by rejecting a sentencing-disparity argument. None of these arguments supports a determination that the district court abused its discretion. Without such a determination, we must affirm. *See United States v. Jones*, 980 F.3d 1098, 1112 (6th Cir. 2020).

First, Jones contends that the court did not consider his medical conditions and supporting records and affidavits. But the court acknowledged Jones's "serious medical conditions, including . . . end-stage renal disease." It summarized the declarations of Jones's medical experts as follows:

> Dr. Mark Faber, a nephrologist at Henry Ford Hospital, estimated in November 2020 that, based on Jones's disease and age (then 65 years old), Jones's life expectancy was 4.8 years compared to 16.3 years for the general population. Additionally according to Dr. Tara Vijayan, a physician specializing in infectious diseases and internal medicine, Jones faces an increased vulnerability to COVID-19 due to his end-stage renal disease and other health issues.

The court also noted the possibility that Jones's daughter would donate a kidney, enabling him to cease dialysis. And in the order denying reconsideration, the court reaffirmed that it had considered "Jones's health conditions in the § 3553(a) analysis." These were sufficient to explain the court's reasoning.

Second, Jones argues that the district court assigned "preemptive weight" to Jones's offense conduct to the exclusion of all other § 3553(a) factors. But a fair reading of the court's opinions show that it did nothing of the kind. Acknowledging factors in Jones's favor, the court concluded they were simply "outweighed" by his offense conduct. Denying reconsideration, the court reiterated it had "considered and weighed a multitude of factors" and did not "adopt[] a per se rule."

It is true that the district court's order quoted language from an unpublished district court opinion to the effect that "when the crime is murder," the "seriousness of the offense is the factor under section 3553(a) that carries considerable, if not preemptive, weight." *United States v. Dale*, No. 92-81127, 2022 WL 163612, at *7 (E.D. Mich. Jan. 18, 2022) (citing *United States v. Bass*, 17 F.4th 629, 638 (6th Cir. 2021)). The words "considerable, if not preemptive weight" in isolation could be read in different ways: from "considerable, indeed preemptive weight" to "considerable, although not preemptive weight." We certainly do not read the phrase to mean the former, and

5

our court has neither held nor suggested as much. In *Bass*, we plainly did not hold that the seriousness of a murder offense would categorically preclude compassionate release. *Bass*, 17 F.4th at 638. Nor did our unpublished opinion in *United States v. Araña*, 844 F. App'x 834, 836–38 (6th Cir. 2021) preclude compassionate release for murder convicts. Indeed, *Araña* distinguished rather than rejected cases from other circuits granting compassionate release to murder convicts. *Id.* at 836.

Jones sought reconsideration in part on the ground that the district court had given preemptive weight to the offense conduct, relying on the district court's "if not preemptive" language and its citations of *Bass* and *Araña*. In response, the district court explicitly denied that it had done so, in the following words:

> The Court's opinion . . . reveals that it considered and weighed a multitude of factors, including Jones's time served, disciplinary record, age, family support, rehabilitation efforts, severe physical limitations, and risk of recidivism. The fact that the Court afforded heavy weight to the severity of Jones's crime was within its discretion; it does not constitute a mistake of law warranting reconsideration.

This language flatly disposes of the argument that the district court categorically denied compassionate release because the underlying crime involved murder.

Third, Jones argues that the court clearly erred in concluding that he ordered the murders of Grice and Caruthers by relying on "factually unreliable information" from the 2008 presentence report. Clear error would amount to an abuse of discretion. *See Jones*, 980 F.3d at 1112. Jones argues that the evidence supports only a finding that he reasonably foresaw that his gang would carry out the murders.

We need not decide whether the court erred by relying on the 2008 presentence report; ample independent evidence supports the court's finding that Jones was responsible for the

murders.[1]  We have held that failing to properly address presentence report objections is harmless where sufficient evidence independently supports a finding at initial sentencing.  *See United States v. Wright*, 747 F.3d 399, 415 (6th Cir. 2014); *United States v. Parrott*, 148 F.3d 629, 634 (6th Cir. 1998).  It follows a fortiori that any procedural error in considering the facts in a presentence report would be harmless if there are sufficient facts to support denial of a later compassionate release motion.

In his plea agreement, Jones stipulated to a murder enhancement based on his use of the "Dog Pound" to "plan the robberies, kidnap[p]ing[s,] and intentional killings of rival drug traffickers . . . includ[ing] the murders of Mark Grice and Antoine Carruthers."  In a previous opinion, we viewed Jones's statement as an admission that he planned the murders.  *See United States v. Jones*, 425 F. App'x 449, 455 (6th Cir. 2011).  Indeed, at his plea hearing Jones admitted using the "Dog Pound" to "plan . . . robberies and kidnappings" that would lead with reasonable foreseeability to the murder of Grice and Caruthers by members of Jones's enterprise.  In terms of culpability, there is little difference between a gang leader's planning a murder carried out by his subordinates and ordering the murder.  For that reason, Jones's own admissions suffice to support the district court's findings regarding his culpability for the murders.

Jones, to be sure, denied direct participation in the murders and sought to minimize his involvement during the plea hearing.  At one point he said, for instance, "[t]o be honest with you

---

[1] Jones relies on Federal Rule of Criminal Procedure 32 to challenge the district court's use of the 2008 presentence report and its description of Jones's role in the murders.  Jones made multiple objections to the report before his sentencing, arguing it was unreliable.  The sentencing judge summarily overruled Jones's objections and adopted the report.  Even if the sentencing judge erred, it is doubtful Jones could raise this Rule 32 challenge years later in a motion for compassionate release.  Rule 32(i)(3)(B) applies only "[a]t sentencing," and proceedings under § 3582(c)(1)(A)(i) are "sentence-modification proceedings," not "plenary resentencing[s]," *Jones*, 980 F.3d at 1107 (citation omitted).  Limited proceedings of this sort, the Ninth Circuit explained, do not encompass Rule 32 challenges to previously adopted presentence reports, on which district courts are entitled to rely.  *United States v. Spears*, 824 F.3d 908, 916 (9th Cir. 2016) (discussing § 3582(c)(2)).

. . . I didn't have nothing to do with the homicides." But holding Jones to his earlier admission of planning the murders—rather than crediting his subsequent attempts to minimize his culpability—does not amount to clear error. When "there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Reinberg*, 62 F.4th 266, 269 (6th Cir. 2023) (citation omitted).

Finally, Jones contends that the court failed to properly consider "unwarranted sentence disparities" created by his 30-year sentence and a codefendant's 18-year sentence. 18 U.S.C. § 3553(a)(6). But as the district court explained, it had no obligation to do so. Section 3553(a)(6) "concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008). Following the Guidelines, rather than deviating downward as Jones requests, best avoids such disparities. *See United States v. Bradley*, 897 F.3d 779, 786 (6th Cir. 2018).

In any event, comparing Jones with his codefendant would not get Jones very far. The codefendant's subordinate role in the enterprise and the lesser severity of his convictions—money laundering conspiracy, 18 U.S.C. § 1956(h), and drug conspiracy, 21 U.S.C. §§ 841, 846—justify any alleged disparity. Indeed, as stated in the codefendant's plea agreement, "Jones assumed the responsibility [for] overseeing [drug distribution] on behalf of [his codefendant]." Jones himself admitted he "directed" the enterprise.

In short, the district court did not abuse its discretion in deciding not to grant compassionate release. The court considered the good and the bad. Jones's "positive record in custody" and his "rehabilitation efforts" favored him, as well as his "serious medical conditions," which mitigated his "risk of recidivism" and his danger to "the public." But the "severity of his crime"—which

involved two murders and substantial quantities of cocaine—and the need to "promote respect for the law," "significantly outweighed" these mitigating factors. While it is apparent that the district court attached great weight to Jones's leadership of a cocaine conspiracy responsible for two murders, we have repeatedly held in applying the § 3553(a) factors that attaching great weight to a single factor is not reversible error. *See United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012); *United States v. Thomas*, 437 F. App'x 456, 458 (6th Cir. 2011).

The judgment of the district court is affirmed.

KAREN NELSON MOORE, Circuit Judge, dissenting. The majority finds that the district court carefully weighed each of the 18 U.S.C. § 3553(a) factors before denying Jones's motion for compassionate release, but the district court's written decisions reflect that the district court glossed over Jones's relevant history and characteristics and gave unreasonable weight to the nature and circumstances of Jones's offense. Because I would hold that this was error that requires us to reverse and remand for further proceedings, I respectfully dissent.

District courts have discretion to balance the § 3553(a) factors when evaluating a motion for compassionate release, but that discretion is not boundless. *See United States v. Ruffin*, 978 F.3d 1000, 1005, 1008 (6th Cir. 2020). A district court abuses its discretion when it "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.'" *United States v. Sexton*, 889 F.3d 262, 265 (6th Cir. 2018) (quoting *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016)). A district court also abuses its discretion when it fails to consider relevant evidence, disregards important historical context, or fails to "square" its analysis with the particular facts of the case. *See United States v. Bass*, 17 F.4th 629, 638–41 (6th Cir. 2021).

The district court made two errors that led it to engage in an unreasonable balancing of the § 3553(a) factors. First, the district court did not engage with all of the § 3553(a) factors. The district court began its § 3553(a) analysis by listing some—but not all—of the statutory factors. *See United States v. Jones*, No. 01-80571, 2022 WL 1487740, at *4 (E.D. Mich. May 11, 2022), *reconsideration denied*, No. 01-80571, 2022 WL 3044819 (E.D. Mich. Aug. 2, 2022). The district court then briefly addressed a few of those factors, including Jones's risk of recidivism and his offense conduct. 2022 WL 1487740, at *4–5. But rather than engage with Jones's argument that his history and circumstances favored a sentence reduction, the district court cut its analysis short,

offering only a conclusory remark that Jones's low risk of recidivism and "any other[] [factors] weighing in his favor are significantly outweighed by the severity of his crime." *Id.* at *4; *see also id.* at *5 (remarking that "[t]he severity of Jones's offense outweighs other § 3553(a) factors that may weigh in Jones's favor"). The district court did not identify the other factors weighing in Jones's favor or explain why those factors were outweighed by his offense conduct. A district court cannot reasonably balance the § 3553(a) factors by considering some but summarily dismissing others. *See Sexton*, 889 F.3d at 265. Yet that is what the district court did here.

Second, the district court relied on a fundamentally mistaken view of our compassionate-release caselaw. According to the district court, "[t]he Sixth Circuit has expressed the view that 'when the crime is murder,' the 'seriousness of the offense is the factor under section 3553(a) that carries considerable, if not preemptive, weight[.]'" *Jones*, 2022 WL 1487740, at *5. That the district court held this unsupported view of our caselaw helps to explain why the district court found it unnecessary to engage with the unspecified "other" § 3553(a) factors supporting Jones's motion: the district court believed that such factors were effectively irrelevant.

Contrary to the district court's suggestion, we have neither held nor suggested that a defendant's offense conduct or any other § 3553(a) factor is entitled to preemptive weight. The district court's authority for its assertion is not a published Sixth Circuit decision but rather an unpublished district-court decision. *See id.* (quoting *United States v. Dale*, No. 92-81127, 2022 WL 163612, at *7 (E.D. Mich. Jan. 18, 2022)). The underlying district-court decision, in turn, cites our decision in *Bass*, where we remarked "a prison term of twenty-two years does not on its face appear proportionate to the seriousness of Bass's offenses, especially in light of the fact that his crimes rendered him eligible for the death penalty." 17 F.4th at 638. *Bass*'s statement plainly does not amount to a holding that the seriousness of a murder offense precludes compassionate

release as a matter of law. To the contrary, *Bass* recognized that there may be "circumstances that would warrant compassionate release for a defendant" sentenced to life imprisonment without the possibility of release—a sentence more severe than the one Jones is serving. *Id.* at 640.

The majority affirms that our court has never held that a murder conviction precludes an incarcerated person from obtaining compassionate release, but it assigns significant weight to the district court's statement in its order denying reconsideration that the court had not adopted such a per se rule. The problem is that the district court's error goes beyond merely misstating our caselaw. Our statement in *Bass*—and our more general recognition that district courts are permitted to place "great weight" on an imprisoned person's offense conduct, *United States v. Zobel*, 696 F.3d 558, 571 (6th Cir. 2012)—must be understood in context. Bass, for instance, was sentenced to life imprisonment without the possibility of release. 17 F.4th at 633. We held that the district court erred by failing to tailor its compassionate-release decision to the fact that the sentencing court had found that there were no circumstances under which Bass could ever be released. *Id.* at 638–41. Here, by contrast, Jones was sentenced to 30 years' imprisonment and has served 22 years of that sentence. No court has ever found that Jones should never be released. By importing *Bass*'s weighing of the offense conduct and surrounding circumstances of that case into this case, and then focusing on Jones's offense to the near exclusion of all other relevant facts, the district court made the same basic conceptual error that we identified in *Bass*.

Our decision in *United States v. Araña*—also cited by the district court—highlights the difference between what we have held to be an appropriate weighing of the § 3553(a) factors and the flawed balancing the district court engaged in here. 844 F. App'x 834 (6th Cir. 2021). Citing several health challenges and the COVID-19 pandemic, Araña moved for compassionate release. *Id.* at 835. The district court denied Araña's motion based on the court's evaluation of the

12

§ 3553(a) factors. *Id.* at 835–36. In doing so, the district court "distinguished . . . cases where" motions for compassionate release had been granted to other defendants who had been convicted of murder. *Id.* at 836. "In one, the defendant had a life expectancy of less than one year." *Id.* (citing *United States v. Wong Chi Fai*, No. 93-CR-1340, 2019 WL 3428504, at *1 (E.D.N.Y. July 30, 2019)). "In another, the defendant had spent much of his sentence suffering from serious illness, meaning that 'further incarceration in his condition would be greater than necessary to serve the purposes of punishment[.]'" *Id.* (quoting *United States v. McGraw*, No. 02-cr-00018, 2019 WL 2059488, at *5 (S.D. Ind. May 9, 2019)). We held that the district court's careful efforts to distinguish these cases supported its denial of Araña's motion. 844 F. App'x at 838.

The district court's analysis here pales in comparison. As discussed, the district court did not carefully work through each of the § 3553(a) factors cited by Jones or distinguish his case from other decisions granting sentence reductions or release to terminally ill prisoners. Nor could it. Jones, like Wong Chi Fai, has had his life expectancy dramatically reduced by several different health conditions. According to one expert, Jones's life expectancy is approximately 2.8 years. R. 846-15 (Farber Decl. ¶ 3) (Page ID #3530–31). And Jones, like McGraw, has spent much of his incarceration suffering from several debilitating illnesses. Jones is 67 and obese, has hypertension and kidney failure, and suffers from diabetes mellitus and Charcot foot. *Id.* ¶¶ 4–5 (Page ID #3531). He is wheelchair bound and may require limb amputation due to his Charcot foot. *Id.* ¶ 4. He has been receiving dialysis three times a week for eleven years and "will not regain kidney function unless he is able to receive a kidney transplant." *Id.* ¶ 3 (Page ID #3530); *see* R. 866-1 (Star Destiny Mercede Harrell Jones Decl. ¶¶ 2–3) (Page ID #6721) (declaration of Jones's daughter stating that she has "agreed to donate one of [her] kidneys" to her father if he is released and can undergo "the procedure at a Michigan hospital such as the University of Michigan

13

Hospital"). The district court should have considered whether these facts and circumstances warranted relief rather than dismissing them out of hand based on Jones's offense conduct.

In the end, the district court was not required to find that Jones's medical conditions or other circumstances warranted a sentence reduction or release, but the court was obligated to consider these facts and each of the § 3553(a) factors when resolving Jones's motion for compassionate release. I would hold that the district court failed to do so, and I would remand the case to the district court to allow it to engage in the appropriate review of Jones's motion. The majority fails to correct the district court's error, and I therefore respectfully dissent.